[No. 22909. Department Two. April 28, 1931.]

FANNIE DEVORE, *as Administratrix, Respondent,* v.
LONGVIEW PUBLIC SERVICE COMPANY, *Appellant.*[1]

*Ellis & Evans* and *Charles H. Paul,* for appellant.
*E. H. Kohlhase,* for respondent.

MILLARD, J.—Alleging that Rolla DeVore was struck
by a bus of the defendant and sustained injuries re-
sulting in his death, the administratrix of the deced-
ent's estate instituted this action to recover therefor.
Defendant's motions for a nonsuit and a directed ver-
dict were denied, and the cause was submitted to a
jury, which returned a verdict for five thousand dol-
lars in favor of the plaintiff. From the judgment
entered on the verdict, motions for judgment notwith-
standing the verdict and for a new trial having been
overruled, the defendant appealed.

About seven-thirty o'clock the morning of Septem-
ber 5, 1929, Rolla DeVore was either struck by or
stepped into the way of a passenger bus of the defend-

[1]Reported in 298 Pac. 717.

ant near Longview. The injuries received in that accident resulted in DeVore's death a few days later.

DeVore was walking in a southerly direction on or alongside the paved portion, which is twenty feet wide, of a public highway near Longview. A passenger bus of appellant was being driven in a northerly direction on that same highway. That is, the bus was on its right or east side of the highway and DeVore was walking towards the bus on the same side, or the deceased's left (east) side, of the highway. The testimony on the part of appellant was to the effect that DeVore was walking off the pavement when the bus driver first saw him; that he was about three or four feet off of the pavement on his left-hand side or the appellant's right-hand side.

When DeVore got close to the bus, he was looking around—looking over his left shoulder; he took a few steps forward while looking back, and when he turned his head around towards the front he was about opposite the radiator on the bus; and when he looked around he stepped on to the pavement and into the side of the bus, coming in contact with the door of the bus, breaking the glass in the door. The bus driver was positive in his testimony that DeVore stepped on to the pavement when he struck the bus. When picked up, immediately following the accident, DeVore was lying partially on and partially off the pavement. One witness testified:

"His feet was on the pavement; from his knees down was on the pavement, and the rest of his body was lying on the gravel."

Respondent's principal witness, a Mr. Rehberg, testified that DeVore was lying at the extreme front end of the bus: "He just slid off as the truck swerved to the left." Appellant's bus driver testified that he applied his brakes when DeVore started towards the

pavement, just before DeVore stepped into and collided with the bus; that the bus swerved to the left and traveled ten or twelve feet before it stopped; that Mr. DeVore was lying about even with (or opposite) the front wheel of the bus.

It is respondent's position that, as the bus came around the curve, and as it approached DeVore, the right front wheel ran off of the pavement on to the unpaved portion of the highway on which the deceased was walking, and struck him; that the bus, which was traveling at a speed of forty miles an hour, then turned slightly to the left on to the pavement and stopped, traveling thirty-five feet after it struck DeVore; that DeVore was picked up by the bus as it struck him; that he then fell off, struck the ground and was found with his feet and legs up to his knees on the pavement at the east side, and the remainder of his body was just off of the pavement on the dirt shoulder of the highway.

Appellant insists there was no evidence to go to the jury showing that the appellant was guilty of any negligent act, and that the evidence affirmatively established the negligence of the deceased as the proximate cause of his death. It is contended it was essential to a recovery that the respondent produce testimony that the bus was off of the pavement at the time the deceased was struck; that were it not for the testimony of respondent's witness, Mr. Rehberg, the evidence not only failed to show that the bus went off of the pavement, but it showed, and without contradiction, that, as the bus driver testified, the accident happened because DeVore stepped on to the pavement without looking; that Rehberg in reality testified that the bus was on the pavement when DeVore was hit; that the undisputed physical facts show that the bus was on the pavement at the point of impact, and, if it were ever

off of the pavement, it was so far back from the place of the collision as to have nothing to do with the accident.

The question presented is not one of conflict of evidence. If that were so, we would not disturb the verdict. The testimony of one witness is determinative of this appeal. There is no testimony, unless it be that of Mr. Rehberg, even tending to prove that the bus was driven off of the pavement and struck Mr. DeVore while he was walking on the unpaved portion of the highway, where he would have had a legal right to be. In the absence of the testimony of this witness, the evidence clearly establishes the fact that the bus was on the paved portion of the highway, where it was required to travel, and that, while the bus was so proceeding, Mr. DeVore stepped from the dirt shoulder of the highway onto the paved portion of the highway and collided with the right-hand side door of the bus, breaking the glass in the door.

If that be true, and without the evidence of Mr. Rehberg, that is the undisputed testimony, there is no showing of negligence on the part of the appellant. Mr. DeVore was either not looking where he was going, or he looked and did not see the bus. In either event Mr. DeVore's negligence was the proximate cause of his injuries, and bars the right of recovery by the respondent. *Herrett v. Puget Sound Tr. L. & P. Co.*, 103 Wash. 101, 173 Pac. 1024.

Mr. Rehberg testified on direct examination that he saw the accident; that he saw the deceased walking along the pavement

". . . ahead of me about 100 feet. . . . he was walking over to the side of the pavement, just about the same as I was; . . . Q. About how far off the pavement would you say? A. I judge a foot and a half or two feet. . . . there was a bus coming towards us. . . . I didn't notice it in particular

until I heard the brakes go on, then just as the brakes went on I saw this man, whether it picked him up or what it done, I just happened to glance up when I heard the brakes go on and the bus kinda swerved a little bit to the left, the way he was traveling, to his left, and this man rolled kind of a half turn and fell with his feet right on the pavement and out to the left of it. Q. Was the bus on the pavement, or off of the pavement when you first saw it? A. The way it looked to me, my recollection is— Q. (Interrupting) In coming down to the turn there, did he leave the pavement? To the side the man was walking? A. Yes, he was coming towards us. Q. Did you observe the driver of the bus before the bus collided with the man? A. I couldn't exactly say that because my attention was drawn to the man, you see; but from the way he came down there and picked this man up, why I don't know what he was looking at. . . . Q. Then you say he turned slightly to the left when he struck the man? A. Yes, the bus turned to the left. Q. Did he stop? A. Yes, he stopped—very suddenly; the bus was in a kind of a quiver when she stopped. Q. Then what did you see? A. Well, there was a couple of cars going the other way, towards the mill, and before I could get there a couple of fellows got out of the car. , . . Q. Did you observe the position of the man with reference to the pavement when he was lying down there after he had been hurt? A. His feet were lying on the pavement and he was lying out on the gravel there. . . . Just about even with the front wheels. Q. Could you say from what you observed there where the bus hit him? A. No, not exactly; it seems like it kinda picked him up and as the bus slued around it seemed like the bus kinda skidded a little, she was aquiver like this (indicating), and he turned over to the left of the bus driver. Q. You mean the bus was quivering when he stopped? A. Yes, when he stopped. Q. The body rolled over? A. It rolled over there somewhere, I couldn't say where it was.''

On cross-examination he testified:

''Q. Did you see the impact between him and the bus? A. Yes. Q. What hit him? A. Just as I heard

the brakes go on, why he hit him. . . . Q. How far did it travel after you heard the brakes go on? A. You see the brakes went on just a little before he hit him. Q. Where was the bus when you looked up? A. When I heard the brakes go on, I looked up. Q. Where was the bus, on or off the pavement? A. The front wheel was off the pavement, I could see that. Q. Which front wheel? A. The right front wheel of the bus. Q. And it hit then in a diagonal direction off the pavement? A. It hit over this way; you see, there is a little curve right there, and it is like that, he was coming a little bit too close to the curve to make the turn without leaving the pavement. . . . Q. Where on this picture, show me, was it the front wheel was off—where was it located? A. Right here as he struck this curve, he came out around here, and then when he throwed his brakes on and started to stop, he skidded off across this way. . . . So that when he stopped here, I don't know how far this was from here to where he stopped, but where he stopped, his front wheel was over here on the pavement. . . . The right one was over five or six feet, over on the pavement—. Q. As I understand you, you didn't notice this particularly until you heard the squeak of the brakes, that is what called your attention to it? A. The squeak of the brakes went on, I suppose when he saw the man. Q. I am asking you, that is what attracted your attention, the squeak of the brakes? A. Yes, it was. . . . Q. How far did the bus travel, you say, after it struck the man? A. About a bus length and a half. . . . Q. How far . . . you figure the stage traveled a length and a half after it hit him? A. After the brakes went on. Q. How far did the bus travel after it struck him? A. That is what I told you, 12 to 15 feet. . . . Q. How far did the Bus carry him? Mr. Kohlhase: He has told you two or three times, between 12 and 15 feet. Q. Are you willing to say that is the outside? A. Yes, I am willing to let it go at that.''

In other words, the witness testified that the bus traveled a distance of thirty-five feet after the brakes went on, and traveled a distance of twelve to fifteen

feet after striking DeVore. The witness further testified on cross-examination that he did not observe the bus until he heard the brakes applied; that he did not know what part of the bus struck DeVore.

"Q. You do not know what part of the bus struck him? A. No. Q. I believe you testified that the bus traveled once and a half its length after you heard the brakes go on? Is that correct? A. Well, something like that. Q. You didn't observe the bus at all until you heard that, did you? That is the first? A. I was walking along there. . . . Q. That was the first thing that called your attention, you heard the brakes go on? A. Yes. Q. When you looked up at that time, where was the bus? A. The bus hit the man, wherever that was. Q. At that time, where was the bus with reference to the pavement? A. That was the time the front wheel was just coming around on to the pavement, when I looked up. Q. How far had the front wheel been off the pavement? A. I don't know. Q. How far was it off when you saw it? A. Well, it was just off the pavement. . . . Q. How far did it travel off the pavement? A. Just a little, because he swerved right back on to the pavement. . . . The wheel was off the pavement when I first saw it; he couldn't have been off very far because he was right at the curve. Q. How many feet do you say he traveled before he got back on the pavement? . . . A. Well I don't know because when I saw this wheel he was just in the act, he had his brakes on; he was just in the act of turning the bus the other way as he picked the man up. Q. So the most you can say that temporarily the right front wheel was a few inches off the pavement? A. Yes. Q. How closely were you observing Mr. DeVore? A. Well it seemed like that the man when he was walking there, whether he heard the brakes or not, but he kinda—it seems to kinda startle him and as he kinda straightened up, well that was when the bus hit him. . . . Q. Did you see him step on to the pavement? A. No, I didn't. Q. Do you know whether he did or not? A. No, when I saw him he was right side of the pavement. Q. And let me ask you this question—Did the bus carry him in a

straight line, or throw him over to the side? A. When the bus turned, I say, it seemed like he just slid off.''

The foregoing testimony clearly establishes the fact that the bus was on the pavement when it hit DeVore. Reasonable minds can not differ on that fact. It would have been physically impossible for DeVore to have been struck by the front or right-hand door of the bus had he been on the dirt shoulder of the highway and off the pavement, if the bus was traveling in the manner described by Mr. Rehberg. The witness, though he testified that he saw the bus hit DeVore, and that the right front wheel of the bus was off of the pavement at that time, later explained his testimony. Such testimony does not make an issue of fact.

''It is a rule of law that testimony by way of correction of a misstatement does not make an issue of fact. *Kurtz v. Detroit, T. & I. R. Co.*, 238 Mich. 289, 213 N. W. 169.

''Witnesses are at times liable to become confused, and we have held on numerous occasions that, if their testimony on direct examination conflicts with that given on cross-examination, it is for the jury to decide when, if at all, they have testified truthfully; but this rule does not apply where their former testimony is corrected and explained.'' *Union Trust Co. v. Detroit G. H. & M. R.*, 239 Mich. 97, 214 N. W. 166.

The witness did not see or pay any attention to DeVore or the bus until he heard the brakes applied. He testified that he then looked, and the bus was about thirty-five feet from the place where it stopped and was traveling forty miles an hour. He was positive as to the speed, and as to the distance traveled after the brakes were applied. He was likewise positive as to the distance the body was carried, and as to the swerving of the bus to the left away from the right-hand or east side of the highway. He testified that, when his attention was attracted by the squeaking of the

brakes (it must be borne in mind that he insisted throughout that the bus traveled a length and a half, or thirty-five feet, from that time), the right front wheel of the bus was just barely a few inches off of the pavement; that the bus then swerved to the left on to the pavement. The bus traveled twenty feet following the putting on of the brakes and prior to striking DeVore, who was then hit by the bus and carried a distance of fifteen feet. When the bus stopped, its right front wheel was five or six feet from the edge of the pavement.

No drawing is necessary to demonstrate that the bus could not have been off of the pavement when it hit DeVore. The bus, when twenty feet south of DeVore, with its right front wheel a few inches off of the east side of the pavement, applied its brakes, and commenced to swerve to the left, doubtless to avoid striking DeVore. When twenty feet had been traveled in that manner, the bus proceeding on an angle to the left, DeVore was hit by the bus and carried by it a distance of fifteen feet, sliding off from the side of the bus.

There can be no other reasonable inference than that DeVore was either on the paved highway at the time the brakes were applied, or that he was immediately alongside the pavement, and that he was startled by the noise incident to the application of the brakes and in his confusion—the bus was twenty feet distant—he stepped on to the pavement and collided with the right hand door of the bus. His proximate contributory negligence bars recovery.

"While this court has often held that the question of contributory negligence would not be taken from the jury and decided as a matter of law unless the commission or omission of the acts as shown were so palpably negligent as to preclude the possibility that reasonable men might differ concerning them, yet, in a case like this, where the physical facts are uncon-

troverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts, and therefore cannot differ." *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848.

The judgment is reversed, and the cause remanded with directions to dismiss the action.

TOLMAN, C. J., BEELER, BEALS, and FULLERTON, JJ., concur.