PAUL L. PROPER, *Appellant,* v. SIDNEY J. BRENNER, *Respondent.*[1]

*Ralph E. Purves,* for appellant.

*Ralph S. Pierce, Edwin J. Cummins,* and *Gordon H. Sweany,* for respondent.

ROBINSON, J.—This is an appeal from a judgment entered notwithstanding a verdict.

Appellant contends, relying upon *Boyd v. Cole,* 189 Wash. 81, 63 P. (2d) 931, *Smith v. Seattle,* 178 Wash. 477, 35 P. (2d) 27, and like cases, that he is entitled to have the judgment set aside and judgment entered upon the verdict if there is any substantial evidence in the record to sustain it, and earnestly insists that there is such evidence. This necessitates a review of those portions of the statement of facts pertaining to liability.

[1]Reported in 71 P. (2d) 389.

In October, 1935, the appellant, according to his own testimony, resided about two miles southerly from Port Orchard, Washington. At six o'clock on the evening of October 26th, he left his home and walked to Port Orchard, arriving at eight o'clock. He went to a beer parlor and drank two glasses of beer. He then went to a dance hall, where he was refused admission. Appellant testified that he did not know why. He hung around the outside of the dance hall from nine until twelve, then went back to the beer parlor, ate a bowl of chili, and started to walk home along the Gig Harbor road. About five or ten minutes after he passed the Harper "Y", he was hit by a car.

If the appellant made out a case for the jury, he did so by giving the following testimony:

"Q. What part of the highway were you walking upon? A. The left hand side of the road—clear off the pavement on the shoulder. Q. Were you walking on the pavement? A. No, sir. Q. Were you walking on the shoulder? A. On the dirt part of the road."

This testimony must be considered in connection with other testimony given by appellant with regard to the accident. On his examination in chief, he testified as follows:

"Q. You were facing the south? A. Yes. Q. Did you see any lights approaching you at all? A. No, sir. Q. You didn't see the car that hit you? A. No, sir. Q. Were you looking straight ahead? A. Yes, sir."

On cross-examination, he testified as follows:

"Q. You don't know what hit you? A. No, sir. Q. Didn't see any car? A. No, sir. Q. Hear any car? A. No, sir. Q. A car coming directly towards you and you didn't see it? A. Yes, that's right."

And, again:

"Q. In any event before you were hit you didn't see any car or hear any car? A. No, sir. Q. You know

whether the car had its lights burning? A. No. Q. You don't know anything about that. As far as you know the lights may have been burning brightly. A. I didn't see any lights."

Thomas Micklun, called on behalf of the plaintiff, testified that, between twelve-thirty and one on the morning of October 27th, while nearing Port Orchard on the Gig Harbor road,

". . . we seen two fellows looking over at a fellow on the ground. The car was about 150 feet ahead. I got out with the other fellows and he was laying on the ground and a fellow said, 'Something hit this fellow.' "

The witness did not recognize the defendant at the trial and could not identify him, but he did recognize Mr. Wang as one of the "two fellows."

Micklun testified that appellant was lying on the dirt shoulder about three feet off the pavement, and that there was a car parked about one hundred and fifty feet to the north, with its left wheels on the pavement. His testimony shows that he at once suspected that this car had probably struck the appellant. He began looking around for tracks. He testified that, from the point where appellant lay, the tracks of an automobile veered to the right on the pavement and swung in a kind of flat arc around to the point where the standing car had pulled off on the shoulder to park. He drew lines illustrating these tracks on the pavement on a map which is in evidence as plaintiff's exhibit "B."

Micklun testified that there were no tracks on the shoulder of the road at all, except to the north of where the appellant was found, which were made when the car turned off to park. He went down and looked at the car. All of its lights were burning, but he found that the right front fender was bent in. He

then took the unconscious man to the hospital. This accomplished, he routed out a deputy sheriff, Mr. Vetters, and took him to the scene of the accident.

Mr. Vetters was called as a witness for the plaintiff. We quote a portion of his evidence:

"Q. . . . Did you see any auto tracks north of there [where appellant was found] toward Port Orchard? A. From the place where the man told me the body laid *starting in approximately forty feet north.* THE COURT: This side toward Port Orchard? A. Yes, sir. The car had swerved off to the right hand side about three feet on the shoulder and had continued down the road about sixty feet. Q. Now with respect to the position that was pointed out to you as being the position of the body where did those tracks lead from? A. I beg your pardon? Q. The position of the body was pointed out to you? A. Yes, sir. Q. Where did those tracks lead from the body? A. They led north on the right hand side heading towards Port Orchard. Q. On the pavement or gravel shoulder? A. On the gravel shoulder." (Italics ours.)

The appellant, relying wholly upon the last two questions and the answers thereto, says that this evidence establishes that appellant was walking on the gravel shoulder at the time he was struck. This is clearly a misinterpretation of Vetters' testimony. Appellant disregards the first question and answer quoted, in which the witness said that the tracks started in approximately forty feet north of the place where appellant was found. When he said, in answer to the question "Where did those tracks lead from the body?"—"They led north on the right hand side heading towards Port Orchard," we think he had in mind the direction in which they were leading rather than the point at which they started.

Micklun, who brought Vetters to the place for the express purpose of observing the tracks and made the examination with him, drew lines on Exhibit "B"

showing that, at and for about forty feet northerly of the place where appellant was found, the tracks were wholly upon the pavement and continued so until the car was driven off on the shoulder for the purpose of parking.

The trial judge brought out clearly from Micklun that there were no marks on the shoulder of the road south of the place where the respondent turned off to park after the accident.

"THE COURT: I don't think you understand his testimony. Do you testify now there were marks south of where the body was lying? A. No, sir. I said north. THE COURT: How far north? A. Well, the marks was just on the paving where they had turned out. Q. How far back of the car? A. About—well, there was marks all the way to where the car stopped. THE COURT: I mean on the gravel off the pavement. A. The car hit the corner ledge and then swerved out. THE COURT: Where it was parked? A. Yes. THE COURT: There were no marks on the gravel or shoulder of the road from that point on south? A. No, sir. THE COURT: Or south of where the body was lying? A. No, sir."

All of the evidence is to the effect that, had the car passed over the shoulder at the place or south of the place where the appellant was found, its tracks would have been plainly visible.

Respondent Brenner testified, in substance, that he and three companions were driving northerly on the Gig Harbor road in a Ford coupe. They had been dancing at a roadhouse. No inquiry was made of him as to whether or not he had been drinking, although Wang, one of his companions, testified that they had had two glasses of beer during the evening. It was very foggy. Brenner had his window wide open and was leaning out in order to keep his proper position on the road by watching the yellow line. He estimated his speed from thirty to thirty-five miles per hour.

Virginia Smith, who was sitting on Wang's lap, suddenly exclaimed that they had struck someone. Brenner had felt a thump and thought a tire had given way. He immediately pulled off the road, got out his flashlight, and, accompanied by Wang, went to the front of the car. They found that the tires were all right, but the right fender was bent inwards, and they heard someone groaning. They went back one hundred or one hundred fifty feet and found the appellant lying on the highway. The upper part of his body was on the pavement. Micklun and another man arrived at the same time or soon after.

Wang testified, substantially, to the same effect, although he estimated the speed at thirty miles an hour. He stated that he looked through the clear spot in the windshield made by the rain swipe a time or two and noticed that Brenner was keeping right next to the yellow line. He had no idea that they had hit anyone until they found the bent fender and heard the appellant moaning. They ran back and found him lying on the edge of the pavement.

Virginia Smith, who was sitting on Wang's lap, the extreme right of the car, testified that she saw the appellant loom up in the fog just about three feet ahead of the car.

"He seemed to be directly in front of me. . . . I saw the man directly in front of our car. I felt the impact and I believed that we had hit him."

She said that she felt sure that the car was not traveling more than thirty-five miles an hour and stated, very positively, that both the car and the appellant were on the pavement when the collision occurred. All three of these witnesses testified that the headlights of the car were burning.

The above is a recital of all the evidence bearing upon the question of liability. There was very little

conflict. All witnesses agreed that it was a very dark night. Witnesses were called for appellant to testify that there was not much, or any, fog at the time the accident happened, but, when asked if it was foggy, appellant himself replied: "I couldn't tell you. It was awfully dark." He finally said that there was thick fog in spots all the way from Port Orchard to the scene of the accident.

There was also testimony to the effect that the appellant was denied admission to the dance because he was intoxicated, and that, when he left Port Orchard, he was staggering and using most of the sidewalk. The witness, testifying as to appellant's condition on leaving Port Orchard, was, however, fairly sucessfully impeached by a written statement which he had signed a day after the accident, and in any event the jury was entitled to believe that the appellant was in full possession of his faculties at the time he was injured.

The specific allegations of negligence were, in substance, as follows: (1) That the defendant drove at a speed of over forty miles per hour; (2) that he was under the influence of intoxicating liquor; (3) that he failed to keep a proper lookout for pedestrians; (4) did not have two lighted headlights on his car; (5) was driving off the pavement and on the shoulder of the road; and (6) failed to avoid striking plaintiff when he saw, or should have seen, him, if exercising reasonable care. As has been seen, there is no evidence at all in support of several of these charges, but, obviously, the jury could have found, from respondent's own evidence, that he was driving at too great a speed, under the circumstances, and, possibly, that, since he did not see the appellant, he was negligent in failing to keep a proper lookout ahead.

The trial court granted the motion for judg-

ment notwithstanding the verdict on the ground that, upon the whole case, it was established, as a matter of law, that the appellant was guilty of contributory negligence, as pleaded by defendant. We think this ruling must be sustained.

It is often dangerous to arrive at conclusions from mere physical facts. It is, for example, rarely, if ever, safe to attempt to judge the rate of speed from a consideration of the amount of physical damage done; but there are situations where physical facts are controlling.

"While this court has often held that the question of contributory negligence would not be taken from the jury and decided as a matter of law unless the commission or omission of the acts as shown were so palpably negligent as to preclude the possibility that reasonable men might differ concerning them, yet, in a case like this, where the physical facts are uncontroverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts, and therefore cannot differ." *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848.

For our present purpose, we wholly disregard the evidence of the respondent and his witnesses. The physical facts show that appellant was struck down while on the paved portion of the highway. The evidence is conclusive that appellant was hit by the right front fender of the respondent's car. He must have been thrown at least some distance to the right of respondent's right front wheel. Yet, taking the testimony most favorable to the appellant, he was lying but three feet off the pavement. We do not consider that this is of itself conclusive proof that the appellant was struck while on the pavement; for, even in his unconscious and desperately injured condition, it is remotely possible that he may have shifted his position

after being struck. But the absence of any tire marks on the soft shoulder, as testified to by appellant's witnesses Micklun and Vetters, is absolutely conclusive.

Appellant testified that he was walking on the shoulder of the road, and not on the pavement, but he testified in the same breath that he was walking directly toward the approaching car, was looking straight ahead of him, saw no lights, saw no car, and heard no car approaching. That the car had its lights burning, cannot be doubted, and, here again, we may disregard the oral testimony of its three occupants and rely upon the physical facts, for the respondent could not have driven along the dark and foggy road without lights. It would have been physically impossible for him to have done so, under the admitted conditions.

Appellant's testimony that he was walking on the shoulder of the road when he was struck down cannot be accepted as raising any real conflict in the evidence, since the physical facts, as detailed by his own witnesses, show that it cannot be true. As was said in *Mouso v. Bellingham & Northern R. Co., supra,*

"In a case like this, where the physical facts are uncontroverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts, and therefore cannot differ."

It must be concluded that the appellant was walking on the pavement. He failed to obey the positive command of the statute to step off the paved portion upon meeting an oncoming vehicle. When it is urged as an excuse for this failure that he did not hear or see the car, his case is made even worse, for he was approaching a car coming directly toward him on a perfectly straight, quiet, country road. He could see and hear, and claims to have been in full possession of his faculties. If he had testified that he saw or heard the car, but, for some reason, was not able to avoid it, he

might have made out a case for the jury. But to maintain that he never heard or saw the car at all, is to confess his own negligence. *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784. See, also, *DeVore v. Longview Public Service Co.,* 162 Wash. 338, 298 Pac. 717.

The judgment appealed from is affirmed.

STEINERT, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.