## Louisville Railway Company v. Thornberry, Extrx.

(Decided January 16, 1923.)

### Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Street Railroads—Operation—Instructions.—It was not error in the trial court to instruct the jury that it was the duty of the motorman in charge of the electric car in approaching the highway in question to run and operate his car at a reasonable rate of speed, as this was an important and much used highway

2. Street Railroads—Operation — Negligence—Signals — Peremptory Instructon.—Held that negligence is not presumed and that where a machine collides with a street car upon a much used highway in a municipality or adjacent to a large city and it is shown that the street car is traveling at an excessive rate of speed, and there is some evidence to the effect that no signals of its approach were given, it is not error to refuse a peremptory instruction to find for the defendant.

3. Street Railroads—Collision With Automobile—Last Clear Chance —Instructions.—Where in a collision between a street car and an automobile at a much used crossing there is evidence of negligence on both sides, and there is evidence that the motorman did not try to stop the car until after the collision, and circumstances conducing to show that he discovered the driver's danger within 75 feet before reaching the point of collision, it is not error to qualify instructions on contributory negligence by authorizing a recovery on what is known as the "last clear chance" doctrine, even though the motorman testifies as a witness for plaintiff and claims that he discovered plaintiff as soon as his danger became apparent and immediately thereafter did everything within his power to prevent the collision.

4. Street Railroads—Instructions—Lookouts.—It was proper in this case for the court to instruct the jury that the motorman was not required to keep a lookout for travellers upon the adjacent parallel highway.

ALRED SELLIGMAN, ALFRED C. KRIEGER and HOWARD B. LEE for appellant

FRED FORCHT and CHAS. F. OGDEN for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Howard H. Thornberry lost his life on a Sunday afternoon in August, 1917, in a collision between the automobile he was driving and a car of the Louisville Railway Company, the collision occurring in Jefferson County at the intersection of the defendant's railway track and Ashland Avenue.

The appellee qualified as his executrix and sued the railway company for the destruction of her testator's power to earn money, and for injuries to his automobile, alleging that the collision was caused by the negligence of the defendant's motorman in charge of the car.

These allegations were traversed and contributory neglignce plead by appellant, and this in turn is controverted by appellee.

At a trial the appellee recovered the sum of $3,000.00, and a new trial being refused, appellant seeks a reversal of the judgment, claiming that the court erred (a) in not giving a peremptory instruction to find for it; (b) in permitting the jury to consider the speed of the car as an element of negligence; (c) in qualifying the instruction on contributory negligence by permitting a recovery on what is known as "the last clear chance" doctrine. The instructions necessary to be considered are as follows:

1. "It was the duty of the motorman in charge of the defendant street car, on the occasion in the evidence referred to as he went south and approached Ashland avenue, to have his car under reasonable control, to operate it at a reasonable rate of speed, to keep a reasonable lookout ahead for persons on the crossing of Ashland Avenue, or so near to the tracks as to be in danger of being struck by the car, to give timely warning of the approach of the car to Ashland Avenue, and generally to exercise ordinary care to keep his car from coming into collision with persons or vehicles using Ashland Avenue crossing; and if the jury shall believe from the evidence that the motorman failed in any one or more of these duties, and by reason of such failure upon his part, if he did so fail, he caused or permitted his car to collide with the automobile in which the decedent was riding, and thereby injured the said decedent so that he died, or damaged his automobile, then the law is for the plaintiff and the jury should so find.

"But unless you so believe from the evidence the law is for the defendant and the jury should so find.

2. "It was the duty of the decedent, as he approached the crossing in the evidence referred to, and before he attempted to cross said car tracks at said point, to operate his automobile at a reasonable rate of speed; to have it under reasonable control, to give timely warning of his intention to cross said tracks, and generally to exercise ordinary care to so operate his automobile as to avoid coming in contact with persons or vehicles using the crossing, and if you should believe from the evidence that the said Howard Thornberry failed in any one or more of these duties and by reason of such failure upon his part, if he did so fail, he so far helped to cause or bring about the collision between the street car and his automobile that but for such failure upon his part said collision would not have occurred, then the law is for the defendant and the jury should so find, although you may believe from the evidence that the mortorman of the street car was also negligent, unless you further believe that after the decedent's failure to exercise care on his part the mortorman perceived his danger, or could by the exercise of ordinary care have perceived same, and could by the exercise of ordinary care in the use of the means at his command have checked or stopped the car in time to have avoided striking the automobile or injuring plaintiff and negligently failed to do so, in which latter event the law is for the plaintiff and the jury should so find.

3. "The motorman was not required to keep a lookout upon the travel on the boulevard parallel with the tracks, and if you believe from the evidence that the motorman gave timely warning of the approach of the car to Ashland Avenue, and notwithstanding the decedent turned his automobile from the direction in which he was proceeding on Taylor Boulevard into Ashland Avenue and appeared so suddenly upon the track and so closely to the front of the approaching car that the motorman in the exercise of ordinary care and with the means at his command was unable to stop or check the car so as to avoid striking the automobile, then the law is for the defendant and the jury should so find."

The Louisville Railway Company operates a line of electric cars from the City of Louisville to Jacobs Park, a distance of about four miles from the city limits. Its tracks are paralleled by the Taylor Boulevard, a much

used public thoroughfare connecting the same points, and at places mentioned in the evidence these highways are within forty feet of each other.  Ashland Avenue runs east and west across both thoroughfares, and connects Taylor Boulevard with the Grand Boulevard.  It appears to have been a city street, as a number of other streets are mentioned running parallel with it and places in the vicinity are described as blocks.

In appellee's brief it is said to be in the City of Oakdale, a city of the fifth class.  While this does not appear in the evidence it is conceded by the pleadings that "both Ashland Avenue and Taylor Boulevard are streets or thoroughfares of Jefferson County, and constantly used by the public," and such use is strongly corroborated by the evidence, which also shows that it is a connecting street between Taylor Boulevard and the Grand Boulevard.

It further appears that just north of Ashland Avenue there is shrubbery, some six feet or more in height, growing on the side of Taylor Boulevard next to the railway track, but none on Ashland Avenue.

On the afternoon in question the testator drove for several blocks southward on Taylor Boulevard, turned east on Ashland Avenue, and as he drove upon the tracks of the appellant his machine was struck by a southbound car and carried a distance of 85 feet.  He was thrown out and wound around the front axle of the street car, suffering injuries from which he died a few days thereafter.

The evidence of the plaintiff conduces to show that two and one-half blocks north of Ashland Avenue he passed a lady sitting on her front porch, who recognized him and who states that he was driving at a moderate rate of speed, and that half a block north of Ashland Avenue he passed and spoke to an acquaintance at Woodland Grove stop.  At that time he was going at a moderate rate of speed, and the witness then saw a street car about one-half block north of them.  It was coming south at a rapid rate and did not stop at the station.

That near the time testator reached Ashland Avenue he met two ladies who were walking on the pavement next to the railway tracks just north of Ashland Avenue.  The ladies both say that he was going at a moderate rate of speed and that neither of them heard any signal from the car until the crash came, although they were not able to fix definitely the length of time elapsing between meet-

ing him and hearing the crash or the distance that they walked in that interval.

In addition to this evidence, plaintiff introduced the motorman of the car and a witness named Willett, who was riding on the front platform at the time. Both of them testify that the full current was on, and the car going at its maximum speed. That no check was made in approaching Ashland Avenue, the motorman fixing the rate of speed at from 20 to 25 miles an hour.

Both these witnesses say the customary signals were given and that they saw the deceased as he turned into Ashland Avenue and that at that time both the car and machine were equally distant from the point of collision.

The motorman claims that he at once gave the alarm signal, reversed the current and did everything within his power to stop or check the car. That the strength of the current in reverse caused the overhead fuse to blow out, and that he then immediately applied the emergency brake. That it was not practicable to apply the emergency brake while the current was reversed, but that he did stop the car within 125 feet of the point from whence he first discovered the testator. He further states that if the car had been running ten miles an hour he could not have stopped under seventy feet.

Willett, however, on direct examination stated that the motorman did nothing to stop the car until after it struck the machine. On cross-examination he admits his reason for saying this was that the overhead blew out at the time of the collision.

The witnesses for the defendant included the conductor, who was on the rear platform and saw but little of the occurrence, and two passengers whose testimony conduced to show that the machine had been running along Taylor boulevard parallel to the car and apparently racing for some distance; that it was sometimes in the rear of the car and at other times in front, and that at the time it turned eastward into Ashland Avenue the machine and car were about equally distant from the point of collision.

It will be readily observed that the legal principles involved in this action are all well settled, and the only question for determination is as to their application to the facts of this case. (1) In view of the importance of Ashland Avenue, the populous community in which it is situated, and its constant use by the general public, it was not error on the part of the court to instruct the

jury that "the motorman as he approached Ashland avenue was required to run and operate his car at a, reasonable rate of speed. C. St. L. & N. O. Ry. Co. v. Armstrong's Admr., 168 Ky. 108.

(2)   It was admitted by all of the witnesses that the car was being operated at an excessive rate of speed. It is not established that the plaintiff's testator saw the car or that his attention was called to it, and under the rule in this state he was not required to stop, look and listen before going upon the tracks, and as there is some evidence to show that the signals were not given the court will not presume contributory negligence on his part, hence the motion for peremptory instruction was properly overruled.   See above.

(3).   It is true that the motorman states that as soon as testator turned in Ashland Avenue he at once threw his car in reverse and did everything within his power to avoid the collision.   As to giving the signals he is corroborated by several witnesses.

It is conceded by all that it is forty feet from the point at which testator turned into Ashland Avenue to the point of collision, and the motorman admits that he discovered him at that time.   If it is further admitted without contradiction that the street car was within forty feet of the crossing at the time, and the motorman gave suitable signals to warn testator and did all in his power from then on to stop or check the car as is testified by him, or had even used ordinary care in that respect, it would seem that the case would come within the doctrine laid down in Ky. Traction & Terminal Co. v. Roschi's Admr., 186 Ky. 371, and appellant's contention should be upheld.   But in part he is contradicted by Willett, who states that the motorman did nothing to stop the car until after he struck the machine.   The fact that he admits on cross-examination that the reason for this answer is that the overhead fuse blew out at the time of the collision does not withdraw this statement, because it is reasonable to believe that such blowing out would occur instantaneously with the reversal of the current, which takes but an instant of time.   Again there were circumstances shown by the plaintiff from which reasonable inferences may be deduced in contradiction of the motorman's conclusions.

It is conceded that Woodland Grove stop is a half block north of Ashland Avenue.   According to the witness Quillen at the time testator passed that point and

spoke to him, he looked northward and saw this car approaching, and he placed it at about half way of the next block, not quite a block. If he was correct in this the street car ran a block or over while the testator was going a half block or over, making the car travel twice as fast as he. On the same ratio, while the machine was traveling forty feet on Ashland Avenue the car would have traveled seventy-five or eighty feet, and prompt action in that distance might have avoided the collision.

These facts and circumstances may be slight, but they do furnish sufficient evidence to submit the issue as to whether the motorman could, in the exercise of ordinary care with the means at hand, have avoided injury to the testator after he discovered his real or apparent danger, or could have discovered it in the exercise of ordinary care.

This issue was admirably submitted to the jury in instruction No. 2, and the defendant's further rights fully guarded in instruction No. 3.

Perceiving no error, the judgment is affirmed.