## Kinsella et al. v. Meyer's Administrator.

(Decided March 2, 1937.)

GEORGE W. HILL and RALPH P. RICH for appellants.

FRANK HANLON and RICHARD KENKEL for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

Lawrence J. Meyer, administrator of the estate of Joseph J. Meyer, deceased, instituted this action in the Kenton circuit court against John W. Kinsella and the Fidelity & Deposit Company of Maryland, seeking a judgment for damages that accrued to the estate of Joseph J. Meyer on account of his death, that appellant claims was caused by appellee negligently running his car against him at the intersection of 12th and Greenup streets, in the city of Covington, on the 16th day of January, 1934. The alleged negligence was denied. Appellant further alleged that the injury complained of was caused by the contributory negligence of the deceased, which was denied by appellee. John W. Kinsella was a police officer of the city of Covington. The Fidelity & Deposit Company of Maryland was surety on his bond for the faithful performance of his duties. The obligation of the bond was to the extent of $1,000. The action was tried in that court. Judgment was rendered in favor of Lawrence J. Meyer, administrator, against both defendants for the sum of $500. The amount sued for was the sum of $5,000. Appellants appeal from that judgment.

They insist that the lower court erred in refusing to give a peremptory instruction at the conclusion of all the evidence offered in the case; that the verdict of the jury was flagrantly against the weight of the evidence; that the court erred in failing to give instruction B that was offered by appellant in lieu of instruction No. 2 that the court on its own motion gave.

In order to properly consider the questions as to whether a peremptory instruction should have been given, or as to whether the verdict is flagrantly against the weight of the evidence, it becomes necessary to state the salient facts shown by the record.

The deceased, Joseph J. Meyer, was 86 years of age at his death; was a cigar maker by profession; at the time of his death was living with his son, Lawrence J. Meyer, appellee, had been living with him for about 13 years; was engaged in making cigars for himself and selling them to saloon keepers, restaurants, and grocery stores, or wherever he could find a customer. His injury occurred on the 16th day of January, 1934, at the intersection of 12th and Greenup streets, in the city of Covington. He was on his way home from work in the evening about 6 o'clock. As he undertook to cross or rather pass over the intersection of 12th and Greenup streets, he received his injury. His son, Lawrence J. Meyer, learned immediately of the injury and he at once went to the place reaching there from 6:10 to 6:15 o'clock, in about ten minutes after it occurred. The weather was clear, the streets dry, and it was just getting dark. He noticed on 12th street running from the north side beginning at the last rail on the north side of the street and extending to the curb of Greenup street a skid that the car made running a distance of 27 feet. His father died on the 18th day of January at the hospital. Lawrence Heiller saw the accident. It occurred around 6:30 o'clock. He was about two doors from the corner at 12th and Greenup streets; that is, he was on the north side of 12th street; saw the deceased going across the street walking slowly; heard car brakes "screeching"; saw the car stop. It was running as he thought about 20 miles an hour. The deceased was pretty nearly over on the other side of the car track at the west side of the street. In fact, he was over half way across the street when the car hit him; thought he was hit on the left-hand side of the car. The car turned to the right, trying to let him by, but instead ran into him. It knocked the deceased down about 5 feet after it hit him; he noticed the car something like 30 feet over on 12th street coming this way, about 10 feet on the intersection of the street going south. There was no other traffic on the street; when he saw the deceased he was leaning a little forward with his head down. When the car stopped after he was injured, the parties who were in it got out and took him away. Kinsella was then introduced as on cross-examination. He admitted that he was the driver of the car; that it occurred about 6 o'clock on the night of January 16th.

The bond that the Fidelity & Deposit Company had executed to the city of Covington was introduced. Clyde Ramsey said he was on the east side of Greenup street about 75 feet west of 12th street when the injury occurred. It was about 6 o'clock; saw the car when it ran into the deceased at the intersection of 12th and Greenup streets. The car was running about 25 miles an hour; heard no horn or signal blown or sounded before it hit him. This in substance was all the testimony introduced by the plaintiff.

The defendant John W. Kinsella stated in his own behalf in substance that he was a member of the police department of Covington; had received a call to go down to 127 West and 2nd streets. A lady had taken poison or iodine and the department wanted him to investigate it. They learned later that she was already at the hospital. She was the wife of Oscar Hacker, who requested that he take him to the hospital to see her. He was on his way when the injury complained of occurred. About the time of the injury, another car had passed the intersection going north. As this car passed him in about 8 or 10 feet from the intersection, the deceased came around; had not seen him until that time. He at once put on his brakes, swerved just slightly to the right in an effort not to strike the deceased. As he did so, the body of the deceased struck his left fender just half way between the bumper and the body of the car. The green light was in view on Greenup street, the street on which he was driving. The red light was on 12th street, the way the deceased was traveling. As soon as he struck the deceased, he stopped his car, took charge of him, put him in his car, and conveyed him to the hospital. When he got out of his car, the body of the deceased was lying at the rear door. The car had not passed over his body. At that time there were artificial lights on the street; he had lights on his car; did not blow his horn or give any signal. The reason he gave for not doing so was that he was so close to the deceased when he first saw him that he had no time to do so. He was about 8 feet of him when he saw him. As soon as he did see him, he threw on his brakes. His car was very nearly at a standstill when the deceased ran into the side of the fender. When he took him to the emergency ward of St. Mary's and Elizabeth's Hospital in Covington, at that place he had a talk with him. He was conscious

and was lying on a stretcher. After shaking hands with him, he told the deceased that he was sorry the accident happened. In answer the deceased said: "It is alright, it was my fault." An objection was made to this evidence. However, we think it competent, this being an action for personal injury under the Act of 1932, c. 59, amending section 606, Civil Code of Practice, which applies. City of Catlettsburg v. Sutherland's Adm'r, 261 Ky. 535, 88 S. W. (2d) 19.

On cross-examination he said he was proceeding south on Greenup street when another car going north passed him about 15 feet from the intersection of 12th and Greenup streets. At that time he saw Mr. Meyer coming across the street running. He was on the east car rail on the southbound tracks about 8 feet away when he observed him. There was no obstruction except the car coming north. It had passed about 12 or 15 feet from the intersection. He did not see Mr. Meyer until he was 12 or 15 feet from him; had his lights on when he struck him. Peter Ackerman was in the front seat with Kinsella when the accident occurred. He was a police officer. He stated in substance that as they approached 12th and Greenup streets the car was running about 20 miles an hour. They had gone about 15 or 20 feet from the intersection. The green light was on. At that time he saw somebody out in the center of the street on the west rail of the northbound car track. The man he saw hesitated a second, then ran toward the west side of Greenup street. The traffic lights were on; that is, the green light was on, meaning for them to go. The red light was on the street the man he saw was traveling, meaning to stop. As soon as Kinsella saw him, he applied his brakes, swerved his car toward the right that would be to the west, and before the car had gone over 4 or 5 feet, deceased ran into the car. His feet were facing south. His head was at the back end of the car. That is, his body was lying the length of the body of the car. They then put the deceased in the car and took him to the hospital. At the hospital he saw Kinsella talking to Mr. Meyer in the emergency ward, but did not hear what he said. He reluctantly stated that a car moving at 20 miles an hour in his judgment could be stopped in 10 or 12 feet. At the place of the injury there was a street light suspended, hanging out over the street. There was another man in the car with them, whose

name was Oscar Hacker, the husband of the sick woman, who stated in substance about the same as that of Ackerman. Appellant introduced Harry Gerwe, who said in substance that he saw the accident; thought it was a street car coming; saw Mr. Meyer coming over on the red light, across the street. A car had just passed going north; saw the deceased start over toward the curb when the car was about 15 or 20 feet from him. The driver of the car to prevent hitting him turned it to one side. If the car had continued, it would have hit him in the back; by turning it he struck him with the front fender on the east side of the car. On cross-examination, said he saw a man coming on to Greenup street in a car. It was just about on this side of Bush street. Bush street runs parallel with 12th street. The distance between the two streets was about 200 feet. At that point he saw the car that injured the deceased. The lights were on; there was no obstruction between the car and the intersection of the street; saw a car going north, but it had passed the police car, "around where the china store used to be," which is between 12th and Bush streets. The car that appellant was driving collided with the deceased at that time. The deceased was between the car rails.

This in substance was the testimony of the witnesses introduced by both appellant and appellee.

From this statement of the facts, it must be conceded as no one denies, that the red light was on when the deceased crossed the intersection traveling on 12th street. It will be observed further that in many particulars the testimony was conflicting and sometimes very contradictory. It was stated by witnesses that the deceased ran against the car; on account of that the driver of the car could not by ordinary care or any kind of care prevented striking him; on the other hand, witnesses stated that the street lights were on. That necessarily meant that it was quite light; while the deceased passed the red light, which he should not have done, in that respect violated the rules of traffic, still if in fact appellant had used ordinary care he might have seen him as he came across 12th street on the intersection, and might have prevented striking the deceased. One witness stated that when he struck him he knocked him 4 or 5 feet. Another stated that he saw the car that appellant was driving when he was 200

feet from the intersection; that at that time the deceased was going into the intersection or near to it. It occurs to us that if this witness could see the car as it came to Bush street, 200 feet away, if the driver of the car had been looking forward, could have also seen him, then he could by the use of the brakes on his car have stopped or turned his car, and in that way prevented striking or coming in contact with the deceased. All of these facts and circumstances presented by the record were questions for the jury. Therefore, we conclude that it was not error for the court to refuse a peremptory instruction; also the verdict was not so flagrantly against the weight of the evidence as to authorize a reversal.

It was the duty of the defendant in driving his car at or on the public intersection of the streets in evidence, where pedestrians may be expected, to keep a reasonable lookout, to run his car at a reasonable rate of speed, to keep it under reasonable control, and to give reasonable warning of his approach, if warning be necessary, under the circumstances shown in the evidence. Section 2739g-28, Ky. Stats.; Wener v. Pope, 209 Ky. 553, 273 S. W. 92; United Casket Co. v. Reeves, 206 Ky. 581, 267 S. W. 1108; Weidner v. Otter, 171 Ky. 167, 188 S. W. 335; Bruce's Adm'x v. Callahan, 185 Ky. 1, 213 S. W. 557; Baldwin's Adm'r v. Maggard, 162 Ky. 424, 172 S. W. 674; Wilder v. Cadle, 227 Ky. 486, 13 S. W. (2d) 497.

Counsel for appellants contend that plaintiff's deceased was guilty of contributory negligence in going upon or attempting to cross the intersection of Greenup and 12th streets, referred to, at the time the red light was on, under the facts and circumstances developed in the case. It is our opinion that it was contributory negligence as a matter of law for the deceased to do so, and that question should not have been submitted to the jury. Bruce's Adm'x v. Callahan, 185 Ky. 1, 213 S. W. 557; Myers v. Cassity, 209 Ky. 315, 272 S. W. 718; Louisville R. Co. v. Basler, 198 Ky. 500, 248 S. W. 1027; Cumberland Grocery Co. v. Hewlett, 231 Ky. 702, 22 S. W. (2d) 97, 98.

As was said by the court in the case of Cumberland Grocery Company v. Hewlett, supra: "However, it does not follow that defendant was entitled to a peremptory instruction."

It is in evidence by one witness that he saw the defendant driving the car that injured the deceased as appellant approached Bush street, a parallel street to 12th street, when appellant was 200 feet from the intersection, and at the same time saw the deceased when deceased was about the middle of the intersection walking rapidly with his head down crossing or passing over Greenup street. The deceased was struck and knocked down in front of the car of the defendant, knocking his body some 4 or 5 feet in front of the car. At the same time there was suspended over the street or near thereto a street light that was very bright. When we consider all of the facts developed in the case, we have concluded that it presents a situation that calls for the "last clear chance doctrine." Cumberland Grocery Co. v. Hewlett, supra; Button v. Pinckley, 253 Ky. 323, 69 S. W. (2d) 347; Myers v. Cassity, supra; Bruce's Adm'x v. Callahan, supra; Louisville R. Co. v. Basler, supra.

It was the province of the jury to determine whether or not the defendant, the driver of the car, exercised at the time ordinary care to avoid injury to the deceased after he discovered, or by the exercise of ordinary care could have discovered his peril in time to have prevented the injury, which caused his death. Louisville Ry. Co. v. Thornberry, Ex'x, 197 Ky. 272, 246 S. W. 812; Button v. Pinckley, supra.

If the facts be substantially the same on another trial, the court should instruct the jury as follows:

"You will find for the defendant unless you believe from the evidence that the driver of the car failed to exercise ordinary care to avoid injuring plaintiff after he discovered, or by the exercise of ordinary care could have discovered, his peril, in which event you will find for plaintiff."

Judgment reversed, and cause remanded for a new trial consistent with this opinion.