## Melton's Adm'x v. Robinson et al.
## Day's Adm'r v. Same.

(Decided Nov. 16, 1937.)

A. T. W. MANNING for appellants.
ROY W. HOUSE for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

These two cases were tried together. Separate appeals have been prosecuted, but the facts in the two cases are substantially the same and they will be disposed of in one opinion.

On June 29, 1932, the appellee G. L. Langdon was sheriff of Clay county, and the appellees T. J. Robinson, Omar Robinson, Dewey Robinson, and Henry Hacker were his duly appointed and acting deputies. On that day, at the direction of Langdon, the four deputies went to a remote section of Clay county to search for and destroy moonshine stills reported to be in operation in that vicinity. T. J. Robinson and Henry Hacker left Manchester, the county seat, before daylight, and met Omar Robinson and Dewey Robinson at Wild Cat hill on Laurel creek. The four officers proceeded to Ells Branch, where they spent the day searching for moonshine stills. They were at Floyd Grubbs' store about 4 o'clock in the afternoon when Hugh Melton and Powers Day appeared. According to the testimony of the officers, Melton and Day committed a breach of the peace in their presence, and the officers attempted to arrest them. A shooting affray resulted in which all of the officers were wounded, and Melton and Day were killed. Laura Melton, mother

of Hugh Melton, qualified as administratrix of her son's estate, and Grant Day, father of Powers Day, qualified as administrator of his son's estate. Each of the personal representatives brought an action against G. L. Langdon, sheriff, and the sureties on his bond, and the four deputy sheriffs to recover damages for the alleged wrongful killing of the respective intestates. The jury returned a verdict for the defendants, and the plaintiffs have appealed. The sole ground urged for a reversal of the judgment in each case is that the verdict is flagrantly against the evidence.

The plaintiffs introduced three or four eyewitnesses whose testimony, if true, showed that the officers shot and killed Melton and Day without justification. Their testimony, however, is contradicted in many particulars, and the testimony of two of them, Birch Melton and George Melton, to the effect that the officers fired the first shot, is contradicted by their own testimony given before the grand jury, which was taken down by a stenographer. According to the testimony of the officers, both of the decedents resisted arrest, and Hugh Melton pointed a pistol at Omar Robinson and Powers Day fired a shotgun several times, wounding all of the officers, three of them severely. If their testimony is true, they shot in their necessary self-defense.

The plaintiffs objected to the testimony of the officers, who were defendants, on the ground that it was inadmissible under subsection 2 of section 606 of the Civil Code of Practice, and the court ruled that it could be considered on behalf of the sheriff and his bondsmen, but admonished the jury that they should not consider the testimony of the deputy sheriffs in their own behalf on the theory, apparently, that each of them was testifying for himself concerning an act done by a decedent. Prior to the amendment of subsection 2 of section 606, by chapter 59 of the Acts of 1932, such testimony was inadmissible, but by that amendment it is admissible "in actions for personal injury, death or damage to property by negligence or tortious acts." Kinsella v. Meyer's Adm'r, 267 Ky. 508, 102 S. W. (2d) 974; City of Catlettsburg v. Sutherland's Adm'r, 261 Ky. 535, 88 S. W. (2d) 19; Warfield Natural Gas Company v. Clark's Adm'x, 257 Ky. 724, 79 S. W. (2d) 21, 97 A. L. R. 971; Colston's Adm'r v. Cincinnati, N. O. & T. P. Railway Company, 253 Ky. 512, 69 S. W. (2d) 1072.

Dewey Robinson, one of the defendants, testified as follows:

"A. Hugh Melton and Powers Day came around from Grant's home and went toward the home of Jessie Collins. Hugh Melton had a pistol in his pocket and he fired it off one time. He hollered, 'Come and get us,' and then they ran in the house and started some music up. I didn't pay any attention to them. After that they took to hollering, 'Whoopee, G—— D—— you, come and get us.' In a short time they came back out of the house. Hugh Melton had a pistol and Powers Day had a shotgun. Tom Robinson or some one said, 'We will have to arrest them boys they are cutting up too bad.' We crossed the fence to get them, and somebody told them to 'consider themselves under arrest.' Hugh Melton kept coming toward us, but Powers Day turned back. Hugh Melton said, 'I haven't any liquor but I have a gun and know how to use it.' Tom Robinson told him to give up, I don't exactly remember what— but anyway he told him to give up, and Hugh Melton said, 'I have no liquor but a damn good pistol and know how to use it.' He says, 'I will die and go to hell before I will give it up.' Some one shot Omar Robinson in the neck and he staggered, and about that time they shot me.

"Q. Who shot you? A. Powers Day shot me.

"Q. Where did he hit you? A. It hit me from the knees up.

"Q. How many times were you hit? A. I was hit fourteen times, I believe.

"Q. What effect did those shot have on you? A. One of them put my eye out.

"Q. Where did the other shots take effect? A. Some went in my shoulder and neck and some in my side and face.

"Q. Who fired the first shot that was fired? A. Powers Day fired the first shot.

"Q. Where was that first shot fired from? A. It was fired from the house, out in the yard."

He also testified that Hugh Melton had his pistol pointed at Omar Robinson when he was shot by Robin-

son.  T. J. Robinson, Omar Robinson, and Henry Hacker testified to substantially the some effect. Sidney Rawlings, a traveling salesman, left Grubbs' store two or three minutes before Hugh Melton and Powers Day were killed, and he corroborated the officers as to the conduct of the decedents immediately preceding the shooting.  Two witnesses testified concerning threats against Omar Robinson made in their presence by Hugh Melton a few days before the tragedy.  As heretofore stated, the testimony of plaintiffs' chief witnesses, who claimed they saw the transaction, was contradicted by their own statements theretofore made under oath. Even with the testimony of the officers eliminated, the evidence was sufficient to sustain the jury's verdict for the defendants.

Judgment is affirmed.