Schmidt v. Schalm.


## AUTOMOBILES—ERROR.

[Cuyahoga (8th) Court of Appeals, December 24, 1913.]

Winch, Meals and Grant, JJ.

HERMAN SCHMIDT V. JENNIE SCHALM.

**1. Woman Crossing Street in Broad Daylight Cannot Recover for Being Struck by Automobile.**

A woman 'who attempts to cross a street in front of an approaching automobile in broad daylight, and is struck and injured, is not entitled to a verdict for damages against the owner of the machine, for the reason that she was manifestly guilty of contributory negligence, either in failing to look in the direction from which vehicles might be expected, or in stepping in front of the machine notwithstanding the evident peril in so doing.

**2. Misconduct of Counsel in Referring to Liability Insurance Company as Interested in Case on Trial.**

In an action for damages against the owner of an automobile, intimations by counsel that some insurance company is interested in preventing a recovery, or questions to prospective jurors, in their examination on their voir dire, as to whether they are connected in any way with any liability insurance company, is prejudicial to the rights of the defendant and highly improper.

ERROR.

*Guthery & Guthery,* for plaintiff in error.

*Harry F. Payer,* for defendant in error.

## MEALS, J.

Jennie Schalm recovered a judgment in the court below against Herman Schmidt for personal injuries sustained by her in being struck by an automobile. Error is prosecuted in this court to reverse this judgment.

At the close of the plaintiff's evidence given on the trial, the defendant moved the court to instruct the jury to return a verdict for the defendant, which motion was refused. At the conclusion of all the evidence offered in the case this motion was renewed. It is claimed by the defendant that the court erred in overruling these motions.

The accident occurred on the morning of September 19, 1911, at the intersection of Superior avenue and East 51st street,

36 O. A. & C. Vol. 38.

in this city. The plaintiff alighted from an east-bound street car, on the east crossing of 51st street, walked around the rear end of the car and started to walk north across Superior avenue. When she had crossed the east-bound track and had reached the devil strip, she stopped. She says that she looked up and down the street, but saw no danger and started to cross the street. Other than this, she says she has no recollection of what occurred. When she had reached the devil strip the street car from which she alighted had advanced in an easterly direction about fifty feet or more, and the automobile which struck her, according to the testimony offered by her to sustain her case, was about thirty or forty feet east of the east crossing of 51st street traveling west at a rate of speed of about twenty-five miles an hour, with the "left wheels being just about the north rail of the west-bound track and the right wheels over toward the curb." It was daylight and there was nothing on the street to obscure her view of the machine. If she looked up and down the street as she says she did, she must have seen its approach. She then "started to go ahead again. She took three or four, possibly five steps which took her about four feet beyond the north rail of the west-bound track where she stopped suddenly and stood as one dazed." Had she "stood still where she first stopped, the automobile would have passed her without striking her. When she stopped at the point four feet beyond the north rail, she was right in the path of the automobile if it had gone straight ahead."

The conductor of the street car, who was standing on the rear platform thereof and who was offered as a witness on behalf of the plaintiff, testified that when he first saw the automobile it was thirty or forty feet east of the crossing; that the brakes were set and the rear wheels thereof were locked and sliding; that when the automobile was about ten or fifteen feet from Mrs. Schalm "it turned around suddenly, almost whirled in its tracks. The rear wheels skidded on the pavement, which was wet, and the rear left fender struck Mrs. Schalm. She did not move either way from the position in which she had stopped the second time. When the automobile stopped it was facing northeast; the front wheels were up near the curb stone and the rear

Schmidt v. Schalm.

wheels were passed the 51st street crossing; the front part of the machine being east of the crossing. When Mrs. Schalm was picked up she was eight or ten feet west of the east crossing and about eight feet from the north rail of the west-bound car track.''

One other witness gave testimony in support of the plaintiff's case, but his testimony is not in conflict with that which was given by the conductor of the street car, but tends to corroborate it. The plaintiff claims that her injuries are directly attributable to the negligent rate of speed at which the automobile was being operated at the time she attempted to cross the street. When she stopped on the devil strip she was in a position of safety. Had she maintained this position it is admitted that she would not have been injured. If she looked up and down the street, as she says she did, she must have seen the automobile. If she saw the machine she was clearly guilty of negligence in walking in front of it. If she did not see it, it is certain that she did not look to see it, as the machine was but thirty or forty feet away from her and her view of it was unobstructed. If she did not look, knowing that automobiles and other vehicles were likely to be passing that point at that time in a westerly direction, she was guilty of contributory negligence. Any other rule would throw the whole burden of care upon the driver of the automobile and relieve pedestrians in the street of any duty of care whatsoever. The law is otherwise.

We are therefore of the opinion that the plaintiff's conduct as shown by the evidence offered by her, leaves no rational inference but that she was negligent in walking in front of the defendant's automobile, and that her own negligence contributed directly to the injuries which she sustained.

In *Cleveland Elec. Ry.* v. *Wadsworth*, 25 O. C. C. 376 (1 N. S. 483), the plaintiff alighted from an east-bound car at Auburndale avenue, East Cleveland, and "walked around the end of the car across the first track and onto the devil strip toward the second track at an ordinary gait, and as he was still stepping forward and was about to touch the south rail of the west-bound track, he saw the west-bound car and its headlight in front of him, and some portion of the car struck him and

knocked him down and injured him.'' He neither stopped to observe nor did he look eastward upon the west-bound track. Had he done so as was his duty before going upon the west-bound track, he might have seen the approach of the car which struck him. The court held that while the railroad company was undoubtedly negligent in running the west-bound car which struck the plaintiff at too great a rate of speed in passing the car that was stopping at the crossing, the plaintiff himself was guilty of negligence contributing to his injury and therefore could not recover. This case was affirmed by the Supreme Court.

And so in the case at bar, it is immaterial that the automobile which struck the plaintiff was being driven at a negligent rate of speed at the time of the accident. The plaintiff having contributed to her own injuries can not recover against the defendant, no matter that he was negligent.

In *Shott* v. *Korn,* 34 O. C. C. 260 (17 N. S. 393), the court of appeals of the first district held that it was not ''error to instruct a verdict for the defendant owner of an automobile in an action for the death of a pedestrian where it appears that the deceased attempted to cross a well lighted street in front of the approaching machine which was in full view with its lamps burning.'' In the opinion the court said:

''The accident occurred at 8:37 o'clock on the evening of May 5, 1912. Benjamin Shott was killed by being struck by an electric automobile, the property of Edna Farrin Korn, at the intersection of Rockdale avenue and Reading road, in this city. Shortly before the accident it had been raining, but it was not raining at the time. The automobile was going south on Reading road, and the decedent, Shott, was preparing to cross Reading road from east to west. The automobile had its lights burning, and the street at that point was lighted by electric lights so that Shott could have seen the automobile and the driver of the automobile could have seen Shott. There were no obstructions in the street. One witness alone saw the accident; this was Mr. Downing, who was standing at the intersection of the two streets. He testified: 'I saw a pedestrian half across the street and a machine coming from the northern intersection of Rockdale

Schmidt v. Schalm.

avenue and Reading road. I paid only casual attention to it at the time, but when I saw neither the pedestrian nor the machine slacken, of course that was a realization that there was an accident imminent. I did not see the actual contact of the machine and the body, because of the automobile—the machine coming between my line of vision and the decedent—but I heard him strike the ground. I judge the car ran in the neighborhood of 75 or 80 feet after striking the man.' "

The court further said:

"From the evidence it seems clear to us that Shott was guilty of contributory negligence and that his death was caused by it. The machine was in plain view quite a distance before he started across the street. There was nothing to obstruct his view and there was nothing to obstruct his mind or prevent him from exercising the prudence which he should have exercised in looking for approaching vehicles when about to cross the street. He seems to deliberately have walked in front of the approaching machine. Under the evidence we think the court was justified in directing the jury to return a verdict for the defendants. The facts were really not in dispute and it became a question of law for the court.

"We are of the opinion that the circumstances of this case admit of no rational inference but that of negligence on the part of the plaintiff. Of this we believe no two reasonable minds could disagree. It therefore became the duty of the court on the defendant's motion, at the close of the evidence offered by the plaintiff, to direct the jury to return a verdict for the defendant. It follows that the court erred in not so doing."

One other question is made by the record of this case which we deem of sufficient importance to notice briefly. While it is not necessary that we should pass upon it in view of the conclusion we have reached in the case, we think that a word or more upon the subject involved therein will not be amiss as a guide to the future conduct of this class of cases.

In the course of the impaneling of the jury, and while one of the prospective jurors was being examined on his *voir dire*, and in the presence of those who were later sworn as jurors in the case, counsel for the plaintiff remarked that doctors would

probably be called upon to testify as to the physical condition of the defendant, both by the plaintiff and the insurance company.

Of course, no insurance company was a party to the action and on the record no insurance company was concerned in the outcome of the action. The court sustained an objection to this remark, and instructed the jury to entirely disregard any remarks made about an insurance company being connected with the case, as there was none and that the defendant in the case was Herman Schmidt. Counsel for the plaintiff thereupon stated that the remark was a slip of the tongue.

However this may have been, counsel for the plaintiff had effectually apprised the prospective jurors present that concealed under the coat tail of Herman Schmidt, the defendant in the action, an insurance company was interested in the outcome of the case. The true defendant was thereby made to bear the burden of whatever prejudice existed in the minds of the jurors against insurance companies. This was manifestly unfair to him, as under a policy of casualty insurance the liability of the insurer is usually limited to a fixed amount. A recovery in excess of this amount in an accident case must be borne by the insured. Thus the defendant might have been very greatly prejudiced by such a remark. Moreover, an insurance company, if there be one that is in anywise interested in the outcome of the case, that is not a party to the action and does not have the right to plead or defend in the action, nor the right to show the nature and extent of its obligation to the defendant, should not be prejudiced in its rights by such remarks. The rights of the parties to an action should be determined by the pleadings and the evidence in the case and not by some extraneous consideration. Such remark as that referred to, if made purposely could have no other object than to prejudice the jury against the defendant, and is obviously improper.

Further in the impaneling of the jury counsel for the plaintiff asked several members of the panel who were later sworn as jurors in the case whether or not they were connected with an insurance company. Objection was made by counsel for the defendant to this line of inquiry, which the court overruled,

Schmidt v. Schalm.

remarking at the same time that counsel for the plaintiff should confine his questions to liability insurance companies. The purpose of these questions is manifest, and it is equally manifest that they were improper. In permitting them to be asked the court clearly erred. What difference did it make to the plaintiff whether an insurance company was interested in the outcome of the case or not? Her rights were not affected nor did they depend upon any such consideration, and if the trial had been properly conducted, she could not have been prejudiced by the fact that an insurance company was obligated to the defendant to bear some part of the judgment recovered against him. Besides the jury in all probability would not have known that an insurance company was in any way interested in the case had her counsel not called their attention to that fact. The suggestion that an insurance company was the real party in interest in the action, and that the qestion asked in the impaneling of the jury were asked for the purpose of safeguarding the rights of the plaintiff, does not appeal to us. On the contrary, we believe that this contention but thinly veils a subterfuge.

After a very careful consideration of the question presented and an examination of many authorities on the subject, we have concluded that this practice is improper and must cease. We hope, therefore, that our conclusion in this regard, while not material to our decision in this case, shall serve the purpose of apprising all parties in interest that in the future we shall regard the admission of evidence or statements of counsel, tending to show that an insurance company is interested in the outcome of the trial, as reversible error.

We think the court erred in overruling the motion of the defendant to direct a verdict for him, for which reason the judgment is reversed and the cause is remanded for further proceedings according to law.

Grant, J., concurs.

Winch, J., not sitting.