# .DECISIONS

## OF THE

# Court of Appeals of Kentucky

## SPRING TERM, 1919.

### Bruce's Administratrix v. Callahan.

(Decided June 20, 1919.)

Appeal from Jefferson Circuit Court
(Common Pleas Division, No. 2).

1. Municipal Corporations—Use of Street by Pedestrian—Automobiles.—A pedestrian has the same right to be upon and use a public street between crossings that an automobilist or other vehicle driver enjoys, their rights being equal.
2. Municipal Corporations—Automobiles—Duty of Driver to Keep Lookout for Pedestrians.—It is the duty of one driving an automobile in a public street to keep a lookout for pedestrians, keep the car under control, and if necessary for the safety of pedestrians bring the car to a stop. On approaching a pedestrian in such street, it is the duty of the automobilist to sound a warning signal by horn, bell or other contrivance, but if the pedestrian sees and knows of the approach of the car, such warning signal is not required.
3. Municipal Corporations—Injury to Pedestrian by Automobile.—It is the duty of one crossing a street in a busy center to exercise ordinary care, the surrounding conditions considered, for his own safety and to avoid coming in collision with an automobile or other vehicle, and if while crossing such street and while the pedestrian is in a safe place, he observes a car approaching along a path which does not endanger him and he voluntarily leaves such safe place and in attempting to pass in front of the car, is struck and injured, no recovery can be had, even though the automobilist fail to give the warning signal required by subsection 15 of section 2739 Kentucky Statutes.

4. Municipal Corporations—Care Required of Pedestrian—Instructions.—An instruction requiring a pedestrian upon the public street to use increased care commensurate with the extra hazardous surroundings, is error. He is required to exercise such care as a reasonably prudent person would employ for his own safety in the street under facts and circumstances similar to those surrounding him, and the court should so instruct the jury.

5. Appeal and Error—Instructions—Although the trial court submit the case to the jury by instructions, one or more of which are erroneous but not prejudicial to the rights of appellant, the judgment will be affirmed.

DAVID R. CASTLEMAN for appellant.

O'NEAL & O'NEAL, EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

An automobile owned by Patrick H. Callahan and driven by his minor daughter, Edith, on Fourth street in Louisville, struck and killed Mrs. Anna Foster Bruce on the morning of June 7, 1917, and this action was instituted by her personal representative against Callahan to recover $25,000.00 in damages. The accident happened between 11 and 12 o'clock in the busiest part of Fourth street, about midway between Green and Walnut streets. Mrs. Bruce and her daughter, residents of Henry county, Kentucky, went into the city on the morning of the injury and death for the purpose and were engaged in shopping along on the east side of Fourth street. They decided to cross the street to another store on the opposite side. Many automobiles were parked near the curb on either side of the street. At this point the street, including the pavements, was about 60 feet wide; near the center were double street car tracks, one for northbound cars and the other for southbound cars. Between the curb and the nearest rail of the street car track on either side was a space of 11½ feet, and these spaces are called driveways. The rails of the street car track are five feet apart, and there is a space of five feet between the northbound street car track and the southbound track. Automobiles were plentiful upon Fourth street that morning. Besides those parked near the curb, others were in motion passing up and down the street. As Mrs. Bruce and her daughter left the east side to go to the west side of the street, they passed between two parked automobiles, and as they came to the driveway beyond they observed a car approaching from

the south; they hesitated, then Mrs. Bruce decided to pass in front of the car and did so, but the daughter remained on the east side. In passing the car which was driven by Mr. Chapman, Mrs. Bruce kept her eyes fixed on it, and appeared to be somewhat pertubed and very anxious to avoid collision with it. After she had passed the Chapman car she continued her course towards the west side of the street when she was struck by the Callahan car driving south, and her body was picked up on the southbound street car track. There is some contrariety in the evidence as to just where Mrs. Bruce was at the time the car struck her, and also as to the distance which she traveled after she had cleared the Chapman car before she entered the danger zone of the Callahan car. There is also conflict in the evidence as to whether Mrs. Bruce saw the Callahan car or realized that it was approaching before it struck her. On this subject both Mr. Chapman and Miss Bruce testify that Mrs. Bruce had her attention fixed upon the Chapman car and that she did not observe the approach of the Callahan car until about the time it struck her; while Miss Callahan who was driving the Callahan car deposes that Mrs. Bruce was looking at her and her car while the car was some twenty feet away from the place where it struck Mrs. Bruce, and that she first hesitated in the street, and then suddenly changed her mind and stepped in front of the car, causing the accident.

Upon a trial of the case before a jury a verdict was returned for Callahan, and the administratrix of Mrs. Bruce appeals.

A reversal of the judgment is asked by the administratrix for two alleged errors committed by the trial court in instructing the jury. The court gave to the jury six instructions, but only the third and fourth are assailed by counsel as erroneous. The instructions are as follows:

"1. It was the duty of Miss Edith Callahan who was operating the automobile at the time in question, to run the automobile at a reasonable rate of speed, to keep a reasonable lookout for persons upon the street in front of the automobile, or so near in front of it as to be in danger of being struck by the automobile, and at such place or places as she had reasonable grounds to anticipate that persons would be upon the carriage way of the street in front of the machine, or so near thereto

as to be in danger of being struck by the machine, to give timely warning of the approach of the automobile to such place by sounding the horn, and to keep the automobile under reasonable control, and to exercise ordinary care to so operate the automobile as to avoid coming into collision with persons on the street; and if you believe from the evidence in this case that she failed to perform such duties, or any of them, and thereby caused the automobile to collide with Mrs. Anna Foster Bruce, and her death resulted therefrom, then the law of the case is for the plaintiff and against the defendant, P. H. Callahan, and you should so find.

"But unless you so believe from the evidence, the law of the case is for the defendant, and you should so find.

"2. It was the duty of Mrs. Anna Foster Bruce to exercise ordinary care to avoid coming into collision with, or being struck by, an automobile on the street, and if you believe from the evidence in this case that she failed to exercise such care, and her failure, if any, so contributed to cause or bring about her injury that but for her failure she would not have been struck by the automobile nor injured, the law of the case is for defendant, P. H. Callahan, and you should so find, although you may believe from the evidence that the operator of the automobile failed in one or more of her duties as submitted to you in the first instruction.

"3. If you believe from the evidence that plaintiff's decedent while in a position of safety, saw the defendant's car approaching, then I instruct you that the duty did not rest upon the operator of the machine to sound a warning thereafter.

"4. The court further instructs you that if you believe from the evidence that the place where plaintiff's decedent was crossing Fourth street, in the light of all conditions and circumstances which you believe from the evidence are proven in the case was unusually dangerous, then I instruct you that plaintiff's decedent, Mrs. Anna Foster Bruce, was required to exercise increased care for her own safety commensurate with said increased danger, if there was any, and if she failed to exercise said increased care and by reason thereof she was struck and lost her life, the law of the case is for the defendant, and you should so find, although you may believe from the evidence that defendant's daughter, who

was driving the automobile, failed in any one or more of her duties as submitted in the first instruction.

"5. 'Ordinary care' means that degree of care which ordinarily careful, prudent persons usually exercise under like or similar circumstances are shown to exist in this case.

"6. If you find for plaintiff, you will award to plaintiff such sum in damages as you believe from the evidence will reasonably and fairly compensate the estate of Anna Foster Bruce for the loss resulting from the destruction of her power to earn money occasioned by her death not to exceed the sum of $25,000.00, the amount prayed in the petition.

"If you find for the defendant, you will say so by your verdict and no more."

Let us consider the objection to instruction No. 3. This instruction is predicated upon the theory that the decedent, after passing the Chapman car, was in a safe place and that she thereafter voluntarily left the safe place and attempted to cross in front of the Callahan car, which she saw approaching. It appears from the evidence that there was at least eight or ten feet in the street between the clearance of the Chapman car going north and the nearest point of contact with the Callahan car on the west side of the street, traveling south. So far as the record shows there was no other automobile near the point of the accident and no street car. If, as contended for appellee, there was a space of eight or ten feet between the Chapman car and the Callahan car, and Mrs. Bruce was in this space, and while there, saw the Callahan car approaching, and thereafter voluntarily left this safe place and attempted to cross the street in front of the car, she was guilty of such negligence as would bar the right of her estate to recover for her death, even though the Callahan car did not sound a signal warning. But, if Mrs. Bruce did not see the Callahan car approaching and it gave no signal of approach by sounding its horn, then the estate is entitled to recover. We have a statute regulating the operation of automobiles upon the streets and public highways, which is subsection 15 of section 2739 Kentucky Statutes, and reads, so far as it affects this case, as follows:

"Duty of operator to give warning. Upon approaching a person walking in the roadway of a public highway . . . a person operating a motor vehicle shall give

warning of its approach by signaling with a horn, bell or other device . . . and use every reasonable precaution to insure the safety of such person . . . and hold same (automobile) under control and bring same to stop if necessary for the safety of such person . . . having due regard for the safety of passengers in such motor vehicle.''

Appellants contend that this statute made it the duty of Miss Callahan while driving the Callahan car on the occasion of the accident, to give a warning of the approach of the car by signaling with a horn, bell or other device, and failing to do so, she was guilty of a violation of the statute copied, which rendered the owner of the car responsible in damages. We do not so construe the statute. A warning signal is only necessary in order to attract the attention of pedestrians and put them upon notice that an automobile is approaching. It can serve no other purpose, but when the pedestrian has his eyes upon the car and knows that it is approaching to the point where he is purposing to cross or use the street, he already possesses the knowledge which a signal warning is otherwise intended to bring to him, and a ''honk'' would add nothing to his knowledge of surrounding conditions. Then, too, in a busy street like the one upon which this accident occurred, where automobiles are constantly passing in great numbers and where footmen have a right to be, a signal in every such case would create such confusion and volume of sound as to impede rather than advance the cause of safety, while serving no useful purpose, but we do not hold and wish not to be understood as holding that a signal, such as required by the section of the statute to which we have referred, is not required in every case except where the pedestrian sees and knows of the approach of the car without the signal.

While the pavement along the streets is primarily intended for pedestrians and the driveway or street is intended for vehicles, a pedestrian nevertheless has the same right in the street as a vehicle. That is to say, their rights are co-ordinate, concomitant and equal. One does not have to give away absolutely to the other; each is obliged to respect the rights of the other and to do no act, while occupying the street, that will bring unnecessary delay or injury to the other. A pedestrian may cross the street between the intersections at pleasure,

but he must take into account the equal right of vehicles, and their probable presence in the street. He can not obstruct traffic by standing in the street unnecessarily, nor arbitrarily require vehicles to move out of his way, but his use of the street must be regulated according to the corresponding rights of others. The rules governing the use of streets as between pedestrians and automobilists are well stated in Melville v. Rollwage, 171 Ky. 612, where we said: "(1) It is the duty of the operator of an automobile at street crossings as well as at other places used by pedestrians, to keep a lookout and run his machine at a reasonable rate of speed and to give warning of its approach; (2) it is the duty of the pedestrian in crossing a street used by automobilist and other vehicles to exercise such care as persons of ordinary prudence would exercise for his own safety in crossing a street at such a crossing, considering the amount and kind of vehicle traffic thereat. He is not obliged as a matter of law to look or listen for the approach of automobiles in order to keep out of their way, and whether he has exercised the proper degree of care is for the jury to say under all the facts and circumstances shown by the evidence in the case; (3) the pedestrian and the automobilist have equal rights in the streets that are set apart for the use of vehicles as well as for the accommodation of pedestrians, and each has rights that the other is bound to respect."

The rule requiring the automobilist to keep a lookout, run his machine at a reasonable rate of speed and give warning of its approach to pedestrians is altogether reasonable and fair because of the great weight, power, speed and destructiveness of such vehicles. One in the street at a point of safety several feet distant from the path of a moving automobile, who sees and knows of the approach of the car, has the duty of exercising ordinary care to avoid collision with the machine and this requires only that he remain outside the path of the automobile if it be in close proximity, or so regulate his speed in crossing as to avoid coming in contact with it.

If in crossing a street one observes an automobile passing along the opposite side of the street, it is his duty to exercise ordinary care to avoid coming in contact with it, but unless the pedestrian sees and knows of the approach of the car, it is the duty of the driver of the car to sound a warning signal, keep his car under

control, and if need be bring it to a stop in order to insure the safety of the pedestrian, and this rule is founded upon good reason, but to require an autoist to sound a warning signal on the approach of his car to a pedestrian who is looking directly at the car, or knows of its approach would be a useless and unreasonable requirement.

We, therefore, conclude that the court did not err in telling the jury by instruction No. 3, that if decedent, while in a place of safety, saw the defendant's car approaching, the driver of the Callahan car was not under the duty of sounding a warning signal to apprise Mrs. Bruce of the coming of the car which she then saw and knew was approaching.

Of instruction No. 4, it is said it omits one of the essential elements upon which a defense, such as the one intended to be presented by it to the jury, is predicated, in, that it fails to advise the jury that the decedent was to be held to the exercise of care commensurate with unusual danger only in case she knew of the existence of such unusual danger at that point. In other words, it is insisted that the instruction, if given at all, should have advised the jury to find for the defendant Callahan only in the event the jury believed from the evidence that the place in the street where Mrs. Bruce attempted to cross was unusually dangerous and this unusually dangerous condition *was known to Mrs. Bruce at the time* she attempted to cross the street, then in such event it was her duty to exercise care for her own safety commensurate with the increased danger. Instruction No. 4 omits the element of knowledge on her part. The trial judge in commenting upon the motion for a new trial and the objection to this instruction observes "the instructions are open to but one criticism; in instruction No. 4, there was one omission that if the court had the instructions to rewrite would be supplied, that is after submitting the question of the place where deceased was crossing the street, was unusually dangerous, the court would add 'and deceased knew it.' However, the conditions were open and manifest, motor cars parked on either side, street cars and automobiles constantly passing, the square one of the busiest and most congested in the city, the court is of the opinion that this inaccuracy was not prejudicial to plaintiff's rights."

An instruction analogous to the one under criticism is often given in railroad crossing cases, where the cross-

ings are extraordinarily dangerous, and in each case the jury is told that if it believe from the evidence that the crossing was unusually dangerous and this *fact was known to the traveler at the time* and before he entered upon the crossing, etc., it was his duty to exercise care commensurate with the increased danger and if he failed to do so the verdict should be for the defendant company. In principle, there is no distinction between a case of the character at bar and one where ordinary care is required, because the care required on a street like the one involved in this case—extraordinarily hazardous crossings—is that degree of care only which an ordinarily prudent person would usually employ for his own safety under the circumstances. Mrs. Bruce was only required to exercise such care in crossing the street for her own safety as a reasonably prudent person would have exercised for his own safety at the same time and place. That likewise is the degree that is required of the traveler at an unusually dangerous crossing. It was incumbent upon Mrs. Bruce, however, to exercise that degree of care which reasonably prudent persons usually exercise in crossing streets in a busy center under facts and circumstances similar to those which obtained on the morning and at the place of the accident in question. If she did not exercise such care, her estate is not entitled to recover even though the driver of the Callahan car was negligent. Whether she knew of the unusually dangerous surroundings at the point in the street where she attempted to cross or not, she saw, or could by the exercise of ordinary care, have seen, according to the evidence, a great number of automobiles standing along on either side of the street, street cars passing to and fro and numerous automobiles moving up and down the street, all of which must have impressed her, as a reasonably prudent person which she appears to have been, with the importance of exercising increased care for her safety in crossing the street at a place not prepared especially for pedestrians, and where no traffic officer was stationed. There was no obstruction that cut off the traveler's view, and the reason for the "increased care" instruction generally given in railroad crossing cases, did not exist and had no application to the facts of this case and should not have been given, though we do not think it prejudiced the rights of appellants under all the facts. If given at all it should have

contained the phrase "and she knew of said unusually dangerous conditions."

While we have several times approved instructions containing the expression complained of as omitted from instruction No. 4, the one under consideration, we are not prepared to say that the omission of this element from instruction No. 4, generally presented by the phrase, "and she knew of said unusually dangerous condition," was such prejudicial error as would warrant a reversal of this judgment. In fact, we regard it as wholly immaterial under all the circumstances.

It is also insisted that instruction No. 4 should not have been given in any event, and certainly not with the requirement of increased care commensurate with the increased danger at the crossing. There is ground for this contention, as intimated above, as there is also for the further contention made by appellant that neither the pleadings nor proof justify such an instruction, but we do not regard these errors, if errors they be, as prejudicial nor do we think that they exercised such controlling influence upon the deliberations of the jury as would warrant this court in reversing the judgment. Wherefore, the judgment is affirmed.