[No. 27102. Department Two. October 18, 1938.]

HERMAN M. TURNQUIST, *Respondent*, v. ROSAIA
BROS., INC., *Appellant*.[1]

*Roberts & Skeel* and *W. R. McKelvy*, for appellant.

*Donald L. Gaines*, for respondent.

BEALS, J.—At about eleven o'clock in the evening,
July 31, 1936, plaintiff, Herman M. Turnquist, was
walking east on Denny way, approaching that street's
intersection with Aurora avenue, an arterial highway.
Aurora avenue runs north and south, and ends at
Denny way, which runs east and west. Wall street,
from the southwest, and Seventh avenue, from the
southeast, run into the intersection, and with Aurora
avenue form a Y. The paved portion of Denny way is

[1] Reported in 83 P. (2d) 353.

a little over forty feet wide, and that of Aurora avenue is over sixty feet in width. From a point about a hundred feet north of its intersection with Denny way, the easterly portion of Aurora avenue fans out along a curve, making the pedestrian crossing on Denny way, as marked on the pavement, one hundred twenty feet, or a little more, from curb to curb.

Plaintiff reached the westerly margin of Aurora avenue, and started across so as to continue his progress along Denny way. When he had proceeded about forty-five feet from the westerly curb, he noticed a light panel delivery truck, belonging to defendant, Rosaia Bros., Inc., a corporation, proceeding northeasterly along Wall street, plaintiff stating that the truck was then some feet south of the intersection of Wall street with Denny way. Plaintiff started to run in an easterly direction, angling a little to his left, passing safely in front of the truck, but before he reached the curb, he was struck by a Chevrolet sedan, driven by one Glenn Andrews, which was turning north on Aurora avenue from Seventh avenue. Plaintiff was thrown some distance forward and suffered injuries for which he sought damages against defendant, alleging in his complaint that the driver of defendant's truck had been negligent in failing to observe the street ahead of him carefully; in failing to keep his car under control; in driving at an unlawful and excessive rate of speed; and in refusing to yield the right of way to plaintiff. Defendant's truck did not strike plaintiff at any time, but stopped before it reached the place on the pavement where plaintiff was lying after he had been struck by the Chevrolet.

The case was submitted to a jury, which returned a verdict in plaintiff's favor, and from a judgment entered against it upon this verdict, defendant has appealed.

Error is assigned upon the denial of several motions interposed by appellant for judgment in its favor as matter of law; upon the denial of appellant's motion for a new trial; upon the giving of one instruction; upon the refusal to give certain instructions requested by appellant; and upon the entry of judgment in respondent's favor.

The intersection of the four streets above referred to makes the crossing dangerous and one that requires care, both on the part of pedestrians and the drivers of motor vehicles. During the last one hundred feet of approach to this intersection along any street, a driver has not a clear view of the traffic upon all of the streets for a distance of three hundred feet back from the intersection. We do not find in the record any evidence which supports respondent's allegations that appellant's driver negligently failed to keep a proper lookout, or that he failed to at all times maintain proper control over his truck.

Aurora avenue is divided into eight lanes, which are indicated by yellow lines on the pavement. A narrow parking lane is indicated on each side of the street, then three traffic lanes for northbound cars on the east side of the street, and three traffic lanes for southbound traffic on the west side. There is no evidence that there was any traffic from the north on Aurora avenue, approaching Denny way. Respondent testified that the only cars which he saw were approaching from the south. The Andrews car, which struck respondent, crossed Denny way and proceeded north on the easterly traffic lane. Appellant's truck crossed Denny way, and proceeded along the second traffic lane.

The testimony as to the speed of appellant's truck is in dispute. Respondent testified that when he first saw the truck, it was on Wall street, about fifty feet

back from the intersection, and that the truck was approaching "pretty fast." Respondent made no other estimate of the speed of this car and testified that he did not observe it after he started to run. He did not testify as to the speed of the car, or whether it slowed down as it entered the intersection.

Andrews, the driver of the Chevrolet, who had pleaded guilty to a charge of reckless driving in connection with the accident, testified that he was traveling between twenty-five and thirty miles an hour, and that appellant's truck was proceeding at about the same rate. It may be noted, however, that although this witness testified that he was a few feet behind appellant's truck, he, after striking respondent, did not stop his car until he had proceeded from fifty to one hundred feet beyond the point where respondent fell, while, on the contrary, appellant's truck stopped before it reached respondent.

One other witness for respondent, Mrs. G. W. Farrar, whose testimony is hereinafter referred to, stated that appellant's truck was proceeding at thirty or thirty-five miles per hour. While the testimony of this witness as to the speed of appellant's car was greatly weakened on cross-examination, the jury had a right to consider it for what it was worth, and we cannot say as matter of law that its effect was entirely destroyed.

Several witnesses, some of them apparently entirely disinterested, testifying for appellant, variously estimated the speed of the truck up to twenty-five miles per hour. Several witnesses agreed that appellant's truck had made a wide turn in entering Aurora avenue, and took its place upon the second lane of traffic from the easterly curb. There was no testimony to the contrary.

The jury, however, may have found from the evidence that appellant's truck crossed the intersection at

a speed greater than that allowed by an ordinance of the city of Seattle, pleaded and relied upon by respondent.

Appellant earnestly contends that the trial court should have granted one of its motions for judgment in its favor as matter of law, upon the ground that the evidence failed to disclose any negligence on the part of its driver or that any act of his was the proximate cause of respondent's injury; and that the record shows beyond dispute that respondent was guilty of contributory negligence as matter of law.

A fire hydrant stands on the east side of Aurora avenue, approximately one hundred feet north of the intersection with Denny way. Respondent testified that, as he ran across the street, he angled somewhat to the north, stating that he was struck only a short distance north of the pedestrian crossing. Other evidence, however, was to the effect that respondent was struck almost as far north as the fire hydrant. The evidence is clear that respondent was struck by the Chevrolet sedan, and that he was not even touched by appellant's truck.

Mrs. Farrar, who, with her husband, was riding in a car following the Andrews sedan, testified, concerning the actual impact, that, in the light of the truck's headlights, she saw respondent "hopping" across in front of the truck, and that she then saw the sedan hit respondent. The witness also testified that, as their car entered the intersection, she noticed the truck approaching, and that the truck made a wide turn, causing the witness to think that the driver would strike the car in which she was riding. This is important as indicating that the truck was not cutting the corner.

Respondent himself testified as follows concerning the accident: He stood on the west corner of the intersection, looked toward both sides, and, seeing that the

street was clear, started to walk across. As he approached the middle of the street, he saw appellant's truck approaching along Wall street. Respondent indicated on a map his position at this time, placing himself on the pedestrian crossing, about forty-five feet east of the west curb of Aurora avenue. He then had over seventy feet to go before he would reach the east curb. On direct examination, respondent testified as follows concerning the accident:

"Where were you then for the moment? A. In the middle of the street. Q. All right. A. And this car come down here pretty fast, so I start to run to save myself from the car, and I run over here (indicating), and the other car come down Seventh avenue and run into me and knocked me down and broke the leg. Q. Do you remember anything else that happened then, Herman? A. No."

On cross-examination, respondent testified that he was familiar with the intersection; that the night was clear and the pavement was dry; that he had reached approximately the center of Aurora avenue when he first saw appellant's truck, which he located as some little distance south of the southerly boundary of Denny way produced across Wall street. Respondent also testified that he saw the Andrews sedan approaching north on Seventh avenue. Respondent testified, "I just seen the car come down, and I start to run, and I seen the car come down." After stating again that no traffic was approaching from the north on Aurora avenue, the witness testified:

"Q. When you saw 'this car which you say was coming pretty fast on Wall street,' did you make an effort to stop and let it go by? A. I just start to run. Q. Just started to run? A. Yes. Q. And did you watch vehicles then when you started to run, or did you quit watching vehicles? A. Yes, I quit watching vehicle. Q. You quit watching for the car? A. Yes. Q. Do I understand, Mr. Turnquist, that when you started to

run there at point—well, it would be the center of Aurora, the point 'T-1', you started to run here (indicating)? A. Yes. Q. You didn't look for cars any more, you just ran for the curbing? A. I just save myself. Q. Save yourself? A. Yes. Q. But did you look for cars any more, watch at all for cars? A. No. I wasn't looking for the car any more. Q. Did you run fast or slow? A. Who, me? Q. Yes, you. A. I running fast. Q. You ran fast—a pretty good runner. You could run pretty fast, could you, Mr. Turnquist? A. Yes."

It is clear that appellant's truck made a wide turn on Denny way, after leaving Wall street and before entering the second north traffic lane on Aurora avenue. As above stated, Mrs. Farrar thought that the truck might collide with their car, which was entering the intersection from Seventh avenue. Respondent, then at about the middle of Aurora avenue, was not in danger until he started to run forward and to his left, right into the path of the advancing traffic. There were no cars coming from the north, and respondent, with perfect safety, could have stepped back to permit the northbound traffic to pass, assuming that any of that traffic would have placed him in danger where he was.

The right of way which a pedestrian enjoys at such a street intersection as this does not extend so far as to protect him in running blindly forward into the path of automobiles which he knows are approaching. Respondent testified positively as to just what he saw and what he did. He ceased to observe the approaching cars, and ran rapidly into their path. Respondent was clearly guilty of negligence which proximately contributed to his injury, in that he failed to take the most simple precautions for his own safety, and on the contrary, blindly ran into a position of great danger.

In the case of *Jones v. Wiese,* 88 Wash. 356, 153 Pac. 330, this court said:

"When about to attempt a street crossing at such a place where danger is imminent and constant, pedes-

trians must take some precautions to guard against it. Something must be done to insure safety, and the failure to do so is such negligence as will prevent recovery in case of injury."

In the case of *Naccarato v. Pengelly,* 148 Wash. 429, 269 Pac. 813, this court laid down the rule that

"Where one steps in front of an approaching car and is injured, even though the approaching car be running at an unlawful rate of speed, the doctrine of contributory negligence will bar recovery, if the danger is open and apparent."

In *Rasmussen v. McCarthy,* 188 Wash. 555, 62 P. (2d) 1353, it appeared that the plaintiff attempted to cross the Pacific highway at a point not marked as a pedestrian crossing, and was struck by a car moving rapidly on the far side of the highway. It is true that, in the case cited, the plaintiff attempted to cross at a point other than a regular pedestrian crossing, but this court, in affirming the judgment of the superior court entered upon sustaining a challenge to the sufficiency of the evidence at the close of the plaintiff's case, held that the plaintiff's negligence was the proximate cause of the collision. Much of the language used is appropriate to the case at bar. In the case cited, as here, the person injured saw the approaching automobile, which he sought to charge with negligence, some time before the collision, and proceeded toward the apparent path of the car, without further regard thereto.

In the case of *Bruce's Administratrix v. Callahan,* 185 Ky. 1, 213 S. W. 557, the court of appeals of Kentucky laid down the rule that

"One in the street at a point of safety several feet distant from the path of a moving automobile, who sees and knows of the approach of the car, has the duty of exercising ordinary care to avoid collision with the machine, and this requires only that he remain outside the path of the automobile if it be in close proximity,

or so regulate his speed in crossing as to avoid coming in contact with it."

The court of appeals of Louisiana, in the case of *Neville v. Postal Telegraph Cable Co.*, 13 La. App. 76, 126 So. 720, held a pedestrian, who was crossing a street at a regular intersection, guilty of contributory negligence which barred her recovery for injuries suffered from a collision with a motorcycle. In the course of the opinion, the court said:

"But a pedestrian must be expected to act with ordinary care and prudence, and, when stepping into a street and seeing an automobile, it is not sufficient to thereafter ignore its presence and depend upon the accuracy of one's judgment in estimating its speed and distance, without assuming the risk involved."

The same rule is approved in the cases of *McKean v. Barker*, 148 Atl. (R. I.) 599, and *Schmidt v. Schalm*, 2 Ohio App. 268.

In arguing that he should not be held guilty of contributory negligence as matter of law, respondent invokes the doctrine of sudden emergency, contending that, because he was without warning placed in a position of danger, it cannot be held that he was guilty of negligence as matter of law, in running across the path of the oncoming cars. The sudden emergency doctrine is salutary, but it does not apply to the case at bar, as the emergency was largely created by respondent himself because of his disregard of conditions open and evident to him, and which he testified he knew.

Respondent cites authorities in which this and other courts held that one claiming damages was not guilty of contributory negligence which barred a recovery. The cases upon this subject are legion, but we are convinced that the facts disclosed by the record in this case, particularly in view of respondent's own testimony, bring this case within the principle well stated

in the cases which we have cited. One walking or running in front of or against the side of a moving automobile, which he saw or should have seen in time to avoid, and suffering injuries from a collision therewith, is generally, in the absence of unusual circumstances or conditions, held guilty of contributory negligence as matter of law. He may be excused by some exculpatory rule, but no such applies here.

If respondent, under the circumstances shown, had collided with appellant's truck, doubtless he would have been held guilty of contributory negligence. It is even more difficult to find any lawful basis for holding appellant liable under the facts shown, respondent not having been struck by appellant's automobile, but by another car; appellant's liability being based upon the theory that appellant was negligent, that this negligence proximately resulted in respondent's collision with the Andrews sedan, and that respondent was not guilty of negligence which proximately contributed to the accident.

Careful examination of the record convinces us that the trial court erred in refusing to direct a verdict in favor of appellant, and in denying its motion for judgment in its favor notwithstanding the verdict.

The judgment appealed from is accordingly reversed, with instructions to the trial court to dismiss the action.

STEINERT, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.