[No. 28725. Department Two. November 13, 1942.]

LOUIS HAGSTROM, *Appellant,* v. GEORGE A. LIMBECK et al., *Respondents.*[1]

[1]Reported in 130 P. (2d) 895.

*George F. Hannan* and *R. L. Bartling,* for appellant.

*Shank, Belt, Rode & Cook,* for respondents.

DRIVER, J.—This is an appeal by the plaintiff from a judgment entered upon a verdict for the defendants in an action for personal injuries.

 Appellant urges that the evidence so overwhelmingly preponderates in his favor that he should be granted a new trial. If he is to prevail on that theory, it must appear from the record, first, that, as a matter of law, respondent husband was guilty of negligence proximately causing appellant's injuries; and second, that there was not sufficient evidence of contributory negligence on the part of the appellant to take that issue to the jury. As we think the second prerequisite disposes of appellant's contention, we shall limit our recital of the pertinent facts accordingly, bearing in mind the familiar rule that, where a verdict is attacked for insufficiency of proof, all the evidence favorable to the prevailing party must be taken as true; and, if there be any substantial evidence, or reasonable inference from the evidence, to support the verdict, it must stand.

Appellant, a pedestrian, was injured when he was struck by an automobile driven by respondent husband (for convenience, he will be referred to as if he were the only respondent). The accident occurred August 27, 1940, at about nine o'clock in the evening, on the south crosswalk of the intersection of Greenwood avenue and north 107th street, about a mile north of the northerly limits of the city of Seattle.

Greenwood avenue runs north and south and is an arterial highway, paved with concrete forty feet wide, and divided into four marked traffic lanes. North 107th street is a graveled east-west, nonarterial road, which intersects Greenwood avenue at right angles. The avenue approaches the intersection from the south on an ascending grade of $3\frac{1}{2}\%$. It has a posted speed limit of thirty-five miles an hour.

At the time of the accident, it was dark but the weather was clear. Appellant had stepped out of a parked car to look for a street sign at the intersection. There being no such sign on the southwest corner, he started to cross Greenwood avenue (from west to east) to look at a telephone pole at the southeast corner of the intersection. At the same time, respondent was approaching the intersection from the south, driving north on Greenwood.

Appellant testified, on direct examination:

"So I started across the street. And as I did, I looked to the south and I seen a car coming from the south. Well, I kept watching that car because I knew the other car, I was past that, and so as I got about nearly maybe to the middle of the street or two feet beyond the middle, I seen he was coming so fast that I says, 'Well, there is plenty of room here for both of us so I will take no chances and let him go by.' So after— well, after I made up my mind to not go across, why, I seen he was coming so fast and maybe, oh, it might have been fifty or seventy-five feet, and when he got about twenty or twenty-five feet of me he was right

in the middle of the pavement, and I says— . . . I knew he didn't see me and that is the last I knew."

On cross-examination, appellant testified:

"Q. When you first saw the [respondent's] car down here some four or five hundred feet you say, could you tell then how fast it was coming? A. No; I couldn't right at that time; no. Q. Not right at that time; but even at that time it was obvious to you that it was coming pretty fast, wasn't it? Is that right? A. Yes, sir. . . . Q. You continued to watch it as it came towards you? A. Yes, sir. Q. Well, after you had walked out, say, ten feet onto the pavement, where you came to this first yellow line dividing the southbound strip of pavement, how close then had the car gotten to you? . . . A. Well, I'd judge maybe about 200 feet— maybe. Q. It was a lot closer to you then than it had been before, wasn't it? A. Yes, sir. Q. At that time were you able to determine how fast it was coming? A. Well, I knew it was going so fast that I wouldn't cross the street. I'd let him go by. Q. Did you first come to that conclusioin when you were on the first yellow line ten feet from the west edge of the pavement? A. Oh, no. When I got to the middle. . . .

"Q. Its headlights were burning? A. Yes; very bright. Q. There was nothing to prevent you from seeing it, was there? A. No, sir. Q. Was there anything to prevent you from determining how fast it was coming? A. No; I don't think so. Q. And your mind— your attention was not distracted by anything else except this one car, was it? A. That is all I had to watch out for."

Appellant then stated that respondent's car was traveling on the inside easterly traffic lane, and that he continued walking on across the center line of the highway into that lane "maybe a couple of feet."

"Q. And it was coming right straight at you in this lane, wasn't it? A. Yes, sir. Q. Were its headlights burning? A. Yes, sir. Q. And in full sight, full view of you? A. Yes, sir. . . . When I decided not to cross, he must have been fifty or seventy-five feet away from me. Q. Fifty to seventy-five feet to the

south and to your right? A. Yes, sir. Q. And you at that time were out two feet across the center line directly in front of his car; is that right? A. Yes, sir. Q. At that time you knew how fast he was coming, didn't you? A. I had a pretty good idea; yes. Q. And then is when you made up your mind that you would have to stop and let him go by? A. Yes, sir. Q. He was still driving close to the center line, wasn't he? A. Yes. Q. Hadn't changed his position any? A. No, sir. Q. And didn't change his position thereafter as far as you knew? A. No, sir. Q. And you continued to stand in that position until the lights went out and you know nothing more about it; is that right? A. Well, when I seen he was about 20, 25 feet from me, I says, 'I guess he didn't see me.' And that is the last I remember."

According to respondent's testimony, as he approached the intersection, he was driving north at about forty miles an hour and with his left front wheel about two feet east of the center line of the highway. He further stated that,

". . . all of a sudden I saw a man standing just outside of the glow of the headlight about two feet to the left. Q. To the left of what portion of your car? A. Of my front left headlight; and I immediately stepped on the brakes and about the same instant that I stepped on the brakes he kept on walking and he,— like that his elbows hit my hood, and . . . The speed of the car threw his head against my windshield but at the same time his body stayed right on that hood and his head leaned back. It just happened all so quick that it didn't seem hardly no time at all that his body rebounded when I stopped suddenly and he slid off over the headlight onto the street. Q. Was there any damage to the headlight and fog light on your car? A. Yes. When he slid over the headlight he hit it with such force that he dented in the fender, the headlight shell and the fender, and the lens was broken, and he caught my fog light and that was turned too."

Even under appellant's own testimony, the jury could have found that his negligence proximately con-

tributed to his injuries. Before he reached the center of the highway, he saw respondent's automobile approaching when it was several hundred feet distant. Its headlights were burning, and it remained in sight until it struck him. It was on the proper side of the highway, and it did not vary its course or change its speed. There was nothing to obstruct appellant's view or to distract his attention. When he reached the center of the highway, plainly indicated by a double line, he chose to go two feet beyond it and directly in the path of the oncoming car.

This court has repeatedly held that, *even as a matter of law*, a pedestrian who steps from a curb or other place of comparative safety and walks in front of an approaching vehicle, is guilty of contributory negligence. *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784; *Jones v. Seattle*, 144 Wash. 188, 257 Pac. 393; *Gottstein v. Daly*, 166 Wash. 582, 7 P. (2d) 610; *Steinheim v. Nicholas*, 171 Wash. 614, 18 P. (2d) 836; *Turnquist v. Rosaia Bros., Inc.*, 196 Wash. 434, 83 P. (2d) 353; *Davis v. Pinkerton*, 199 Wash. 579, 92 P. (2d) 706.

In the *Turnquist* case, we quoted approvingly from *Bruce's Administratrix v. Callahan*, 185 Ky. 1, 213 S. W. 557, as follows, p. 441:

" 'One in the street at a point of safety several feet distant from the path of a moving automobile, who sees and knows of the approach of the car, has the duty of exercising ordinary care to avoid collision with the machine, and this requires only that he remain outside the path of the automobile if it be in close proximity, or so regulates his speed in crossing as to avoid coming in contact with it.' "

Moreover, if the jury, as it had a right to do, believed respondent's statement that appellant walked into the side of his car, then, clearly, it could have concluded that appellant's own negligence contributed to his injuries. See *Estill v. Berry*, 193 Wash. 10, 74 P.

(2d) 482, and the authorities therein cited and discussed. The following quotation from 3 Berry, Law of Automobiles 353, § 3.210, appears in the opinion, p. 18: " 'A pedestrian who, unmindful of his surroundings, walks against the side of an automobile moving in the street, cannot recover.' "

■ Appellant calls our attention to the rule approved in *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848, and *Proper v. Brenner,* 191 Wash. 540, 71 P. (2d) 389, to the effect that, where the physical facts are not controverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts, and, therefore, cannot differ. He then argues that certain physical facts, particularly the marks on respondent's automobile appearing in certain photographs introduced in evidence, prove that appellant did not walk into the side of the car, but was struck by the front bumper.

Appellant's argument on this point is very persuasive, but we cannot say that it is absolutely conclusive. It is well known that, when the tremendous momentum of a speeding automobile is suddenly arrested by contact with some other movable object, the resulting reaction of both the car and the object commonly is erratic and unpredictable. In his testimony, it will be noted, respondent offered an explanation as to how the marks on his car were made. The explanation may not seem to be so logical and reasonable as the theory of appellant's counsel, but it was the privilege of the jury to believe it. We cannot say that the physical facts are such as to overcome completely the respondent's testimony that appellant walked into the side of his car, and, therefore, the rule exemplified in *Proper v. Brenner, supra,* is not applicable in the present case.

One of the affirmative defenses advanced by respondent in his amended answer was that the appellant was under the influence of intoxicating liquor. At the trial, respondent's counsel asked the following question of one of his own witnesses, who stated that he was at the scene of the accident shortly after it had happened: "Did you form any opinion at that time as to whether or not the injured person had been drinking?" An objection to the question was sustained. The witness was further examined as to what observations he had made of appellant's condition. In the course of this examination, appellant's counsel made a number of spirited objections, on which the court ruled; remarks were made by each of the opposing attorneys; and the witness, it is apparent from the record, became doubtful and confused as to what he could and could not properly say. He never did express any opinion as to whether or not appellant was under the influence of liquor or testify to any fact that would support such a conclusion. He did state that, at the scene of the accident, a woman companion of appellant's was intoxicated, although he could not identify such companion. Appellant contends that the examination of the witness was so irregularly conducted and of such a highly prejudicial character as to warrant the granting of a new trial.

It would unduly extend this opinion to set out in full the testimony of the witness bearing on appellant's contention. We have carefully considered it with due regard to its relation to the other evidence in the case, and have concluded that the examination did not involve any misconduct on the part of respondent's counsel.

Finally, appellant maintains that the trial court erred in rejecting his offer of a photograph of the dwelling house of the two witnesses, husband and wife, with

whom he visited shortly before the accident. Clearly, the refusal of the proffered evidence did not constitute reversible error.

Judgment affirmed.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.

