[No. 30511.  Department Two.  February 8, 1949.]

LeRoy Shelton, *Appellant*, v. Russell E. Bennett *et al., Respondents.*[1]

*Theodore S. Turner*, for appellant.

*Kumm & Hatch* and *W. R. McKelvy*, for respondents.

Simpson, J.—Plaintiff instituted this action to recover damages for personal injuries occasioned in an automobile accident. The case, tried to a jury, resulted in a verdict in favor of plaintiff. The trial court granted defendant's motion for judgment notwithstanding the verdict and, in the alternative, for a new trial.

Several errors are urged. However, we will consider only that one which relates to the granting of the motion to set aside the verdict of the jury.

In approaching the question, we have in mind the established rule that appellant is not only entitled to have

[1]Reported in 202 P. (2d) 461.

all evidence weighed in his favor, but also every reasonable inference deducible from the evidence. *McFarland v. Commercial Boiler Works*, 10 Wn. (2d) 81, 116 P. (2d) 288.

We summarize the facts produced at the trial as follows: The accident occurred between six thirty and seven p. m., January 8, 1946, at a point on east Marginal way, just south of the corporate limits of the city of Seattle. It was dark and the lights had been turned on. East Marginal way, extending in a northerly and southerly direction, is a four-lane paved highway, fifty feet in width, and is heavily traveled. Appellant, while walking across the highway, was struck by respondents' northbound automobile. The scene of the collision was in front of the manufacturing plant of the Boeing Aircraft Company. The Boeing plant, with a railroad track in front of it, is west of the highway, and the airport landing field is east of the roadway. South of the scene of the accident the Boeing Company maintained a crossing for the purpose of transporting airplanes from the plant to the field. Guardhouses were located on each side of the highway near the crossing. North of the airplane crossing, and south of the place where the accident occurred, there was a marked pedestrian crossing. In the center of the highway, and ten feet north of the pedestrian crosswalk, there was an overhead blinker traffic signal which showed amber to highway traffic and red to pedestrian crossing traffic.

Appellant, employed by a railroad company as a switchman, was off duty at the time he was injured. Just prior to the accident, he had been riding on the switch engine which was traveling north on the west side of the highway. The engine upon which he was riding stopped in front of Boeings. Appellant got off, walked to the guardhouse situated on the west of the highway and then to a dispatcher's shed, for the purpose of telephoning his wife. He was unable to secure the use of a telephone and started for the guardhouse on the east side of the highway. In crossing the highway, appellant did not go to the marked pedestrian crossing, but pursued a course in a southeasterly direction across the portion of the highway reserved for vehicles. Witnesses

testified that he hurried—that is, "He wasn't running. He was not really running. Kind of a little dog trot." "He was trotting."

As appellant crossed the highway, he ran into, or was struck by, the left front fender, light, and grill of respondents' car. The point of impact was about fifteen feet north of the pedestrian crosswalk and sixteen or seventeen feet from the easterly margin of the highway. The position would be about the center of the northbound lane. Respondents' speed just prior to the accident was estimated at fifty miles per hour. The maximum speed limit at that place and time was thirty-five miles per hour. Appellant's witness, Vannoy, a locomotive fireman, was assisting in operating the engine upon which appellant rode just before the accident. Mr. Vannoy testified that he saw appellant leave to cross the highway on an angle. That he was trotting.

"Q. That is the way you'd describe it, as trotting? As he went to the pavement was he still trotting? A. Yes, he was on a slow trot all the way. Q. So there will be no question what you mean, he ran across there on the planks and when he came to the west edge of the pavement he kept on running? He didn't stop before going on the pavement? A. No. He only hesitated just enough to look. I noticed he looked down the highway. Q. You noticed that? A. Yes. I was watching. Q. There is nothing there you didn't notice? A. That is right. At the time there was nothing I didn't notice. Some of it is a little vague, but I didn't miss nothing. Q. In any event, he didn't stop? He was still trotting? A. Yes. Q. He kept on trotting from that time until the collision? A. Yes. Q. How far away were cars that were coming south as this man went onto the pavement? A. Coming south? Q. Coming from town were there cars coming here? A. There was a truck came along there by the time we got stopped and got off the engine. Q. Was it up here some place on the pavement? A. It was quite a ways from there when he went out on the pavement. Q. Any other vehicles coming from Seattle? A. No. Q. Just that truck? A. Yes."

Immediately after the accident, appellant was taken to Harborview Hospital, where a blood test was taken. The test showed that he had "241 milligrams per cent" of alcohol

in his blood. Dr. Leo Sulkosky testified that:

"150 milligrams per cent is usually considered strong intoxication. You can't drive a car. You can't do any of the normal things a man should do that has just had some alcohol. Q. What would you say 241 would mean? ·A. 200, expressed by most men, is definite intoxication, and 300 is coma. 241 would be between the two of them. Q. Between intoxication and coma? A. Yes."

In passing upon the motion for n.o.v., the trial court stated:

"Plaintiff had the choice of crossing at the crosswalk, where he had the right of way, or taking a chance by crossing diagonally, while running on a long diagonal course toward the crosswalk. He was required to know that he was charged with yielding the right of way to the vehicles on the roadway. Yet he took no precautions for his own protection and collided practically head on with defendants' vehicle. The motion n.o.v. will have to be granted."

Our statute, Rem. Rev. Stat., Vol. 7A, § 6360-99 [P.P.C. § 295-49] (Laws of 1937, chapter 189, § 99, p. 902), provides:

"Pedestrians crossing a roadway other than at intersection crosswalks shall yield the right of way to all vehicles upon the roadway."

The question for decision is, was appellant as a matter of law guilty of contributory negligence which barred his recovery? This court has held in numerous cases that a person who sustains injuries as a result of actions similar to those related here, is guilty of contributory negligence which precludes any recovery. *Rasmussen v. McCarthy*, 188 Wash. 555, 62 P. (2d) 1353; *Hamblet v. Soderburg*, 189 Wash. 449, 65 P. (2d) 1267; *Turnquist v. Rosaia Bros.*, 196 Wash. 434, 83 P. (2d) 353; *Poland v. Seattle*, 200 Wash. 208, 93 P. (2d) 379; and, *Hynek v. Seattle*, 7 Wn. (2d) 386, 111 P. (2d) 247.

We call especial attention to the holding in the cases of *Hagstrom v. Limbeck*, 15 Wn. (2d) 399, 130 P. (2d) 895, and *Nylund v. Johnston*, 19 Wn. (2d) 163, 141 P. (2d) 863.

In the *Hagstrom* case, it appears that the plaintiff pedestrian was hit by defendants' automobile when plaintiff was

crossing Greenwood avenue at north 107th street, outside the northerly limits of the city of Seattle, about nine p. m., on a clear, dark evening. The evidence in that case showed that plaintiff saw defendants' car, knew it was coming so fast he could not safely cross in front of it, but notwithstanding that information, proceeded two feet past the yellow line, where he was hit. The jury brought in a verdict for defendants, and plaintiff appealed on the ground that the evidence was in his favor, and that the trial court should have granted a new trial. In passing, we stated:

"Before he [appellant] reached the center of the highway, he saw respondent's automobile approaching when it was several hundred feet distant. Its headlights were burning, and it remained in sight until it struck him. It was on the proper side of the highway, and it did not vary its course or change its speed. There was nothing to obstruct appellant's view or to distract his attention. When he reached the center of the highway, plainly indicated by a double line, he chose to go two feet beyond it and directly in the path of the oncoming car.

"This court has repeatedly held that, *even as a matter of law*, a pedestrian who steps from a curb or other place of comparative safety and walks in front of an approaching vehicle, is guilty of contributory negligence. [Citing cases.]

"In the *Turnquist* case, we quoted approvingly from *Bruce's Administratrix v. Callahan*, 185 Ky. 1, 213 S. W. 557, as follows, p. 541:

" ' "One in the street at a point of safety several feet distant from the path of a moving automobile, who sees and knows of the approach of the car, has the duty of exercising ordinary care to avoid collision with the machine, and this requires only that he remain outside the path of the automobile if it be in close proximity, or so regulates his speed in crossing as to avoid coming in contact with it." ' "

The accident in the *Nylund* case occurred while plaintiff was crossing an avenue in Yakima at a point seventy or eighty feet east of a pedestrian crosswalk. After he arrived in the middle of the street, he saw the lights of defendants' car at an indeterminate distance. He continued to walk across the street until he reached the left side of his parked automobile, ascertained that the door was locked, and turned with the intention of walking in front of his car so that he

might enter by the curb door. As he turned, he was struck by defendants' car. He recovered a verdict, which the trial court set aside on motion for judgment n.o.v. In affirming the action of the trial court, we held:

"Appellant was contributorily negligent throughout the entire interval beginning with his departure from the tavern and ending in the collision. He crossed Yakima avenue between intersections instead of using the sidewalks and crosswalk; he failed to yield the right of way to oncoming traffic; though he had observed the lights of respondent's car before, or about the time, he reached the middle of the avenue, he nevertheless proceeded forward without paying any further attention to the approaching vehicle; upon trying the handle of his car door, and while still upon the pavement, he turned to his left, with his back to the oncoming automobile, intending to proceed farther in the wrong direction. Had he turned, or even glanced, to his right, as he then should have done, he would not only have seen the approaching automobile, but could also have saved himself from his own prior contributory negligence by stepping closer to his car, . . . The facts demonstrate not only his contributory negligence but also that such negligence was a proximate cause of his injuries."

The holding in the cases to which we have referred clearly demonstrate that the trial court was correct in granting a judgment notwithstanding the verdict. Appellant was in a position which acquainted him with east Marginal way. He could see the crossings, especially the one reserved for pedestrians, because there was a blinker light over it. He did not observe the rule of the road by crossing at the designated place, but went in an angling direction across that portion of the highway upon which he knew vehicles had the right of way. He saw the car coming, but disregarded that danger sign and, as the witness said, trotted across the highway in front of the oncoming car.

The judgment will be affirmed.

MALLERY, ROBINSON, and SCHWELLENBACH, JJ., concur.

---

March 18, 1949. Petition for rehearing denied.